BRANDEN HOLLOWAY *v.* COMMISSIONER
OF CORRECTION
(AC 34511)

DiPentima, C. J., and Sheldon and Lavery, Js.

Argued May 22—officially released September 3, 2013

*Dylan P. Kletter*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Brenda L. Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Branden Holloway, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he challenged his conviction of possession of narcotics with intent to sell within 1500 feet of a public

housing project in violation of General Statutes § 21a-278a (b). On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, and (2) erred in denying his petition for a writ of habeas corpus, which was based on claims (a) that his trial counsel was ineffective in failing to object or except to the trial court's alleged failure to instruct the jury that it could not find him guilty under § 21a-278a (b) without the state's having proved beyond a reasonable doubt, as an essential element of that offense, that he possessed narcotics with the intent to sell them at a specific location, which location happened to be within 1500 feet of a public housing project; and (b) that his appellate counsel was ineffective in failing to raise claims of error on direct appeal from the conviction under § 21a-278a (b) based upon the trial court's alleged failure to instruct the jury on the intended-location-of-sale element of the charged offense, and the alleged insufficiency of the evidence to prove that essential element beyond a reasonable doubt.[1]

Concluding, as we do, that the petitioner's claim of ineffective assistance of trial counsel is well supported by the record before us, we agree with the petitioner that the trial court abused its discretion in denying his petition for certification to appeal on that issue and conclude, upon reviewing his claims on the merits, that the judgment of the habeas court must be reversed, the petitioner's challenged conviction under § 21a-278a (b) must be vacated and, accordingly, the petitioner must

[1] The petitioner also claims that the habeas court abused its discretion by precluding him from opening his case after resting in order to present the testimony of his appellate counsel in support of the claim of ineffective assistance of appellate counsel. In light of our decision to grant the petitioner relief from his challenged conviction on the basis of his substantive claim of ineffective assistance of trial counsel, however, we do not reach the merits either of this procedural claim or of the alternate substantive claim of ineffective assistance of appellate counsel to which it relates.

be afforded a new trial on the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project.

In addressing the petitioner's claims on direct appeal, this court set forth the following facts. "On the morning of November 28, 2005, Sergeant William Lowe, Detective Mark Lepore and Officer Terrance Blake of the Norwalk police department were assigned to locate and to arrest the [petitioner] pursuant to a warrant for a violation of probation. The three police officers, traveling together in an unmarked police cruiser and dressed in plain clothes, headed to the area surrounding the Colonial Village public housing project—the area they were assigned to search. They were aware that the [petitioner] likely was driving a black Hyundai for which they had the license plate number. The officers drove to a parking area behind a strip mall located at 280 Connecticut Avenue, across the street from Colonial Village. As the officers approached this area, Blake, who was driving, saw a black Hyundai parked perpendicular to a wall. The license plate number matched the one that the officers were given, and Blake parked so that the Hyundai was blocked by the cruiser. Parked next to the Hyundai was a white Nissan Sentra, in which Frank Bruno was seated. The [petitioner] was walking from his vehicle to the Nissan as the officers approached; he was between the two vehicles as the officers exited the cruiser.

"Upon exiting the cruiser, the officers identified themselves, drew their revolvers, ordered the [petitioner] to stop and put his hands up and informed him that he was under arrest. The [petitioner] did not comply and moved toward the wall adjacent to where his car was parked. Lepore walked to one side of the Hyundai while Blake walked between the Nissan and the Hyundai in an effort to cut off any means of escape for the [petitioner]. Lowe, who noticed that Bruno was

attempting to swallow something that Lowe believed to be packaged cocaine, approached the Nissan and, through the driver's side window, attempted to stop Bruno from swallowing the contraband by grasping him by the jaw. As Lowe confronted Bruno, Lepore and Blake attempted to place the [petitioner] under arrest and to handcuff him. The [petitioner] became verbally abusive and resisted their efforts to handcuff him by kicking and elbowing the officers, tensing his arms, thrashing his body and limbs about and wrestling with the officers. During this struggle, Lepore, in an effort to gain control of the [petitioner], punched him multiple times on the back and upper arms. This had no discernible effect because the [petitioner] continued to resist the officers.

"At one point during the struggle with the [petitioner], Blake released his grip on him and retrieved a Taser gun from Lepore's utility belt. Blake warned the [petitioner] twice that if he did not stop resisting, he would be immobilized with the Taser gun. When the [petitioner] did not comply, Blake shot him with the Taser gun in the back after which the [petitioner] fell to the ground and was handcuffed. Soon after the [petitioner] was subdued, Blake searched him and retrieved from his left front pants pocket a plastic bag containing twelve bags of a white powdery substance. Subsequent chemical testing conducted by Lepore and then by Rafal Mielguj, a department of public safety chemist, confirmed that the substance was cocaine. Mielguj determined that the cocaine seized from the [petitioner] weighed approximately seventeen grams and was divided into the twelve bags in amounts varying from about one third of a gram to more than five grams.

"During the struggle with the [petitioner], Lepore radioed for backup assistance. Greg Scully, a Norwalk police officer, responded to Lepore's call. Upon arriving at the scene, Scully saw a man later identified as Sean

Sullivan . . . who was carrying a small gray plastic bag, run from the area. Previously, Sullivan had been seated in the Hyundai during the officers' interactions with the [petitioner] and Bruno. As the [petitioner] was being handcuffed, Sullivan exited the Hyundai and ran away. Scully pursued Sullivan in his vehicle. At no time prior did Lowe, Lepore or Blake observe Sullivan in the Hyundai. Soon after he started pursuing Sullivan, Scully exited his vehicle and continued to pursue him on foot. Scully then tackled and subdued Sullivan. Scully found a loaded nine millimeter [TEC-9] handgun along with an instruction manual for the weapon inside the gray plastic bag.

"The jury subsequently found the [petitioner] guilty of criminal possession of a pistol or revolver [in violation of General Statutes § 53a-217c (a) (1)], possession of a weapon in a motor vehicle [in violation of General Statutes § 29-38], possession of narcotics with intent to sell by a person who is not drug-dependent [in violation of General Statutes § 21a-278 (b)] and possession of narcotics with intent to sell within 1500 feet of a public housing project [in violation of § 21a-278a (b)]. The court imposed a total effective sentence of fifteen years incarceration." (Footnotes omitted.) *State* v. *Holloway*, 117 Conn. App. 798, 801–803, 982 A.2d 231 (2009), cert. denied, 297 Conn. 925, 998 A.2d 1194 (2010).

In its decision on the petitioner's direct appeal, this court: (1) reversed the petitioner's conviction of possession of narcotics with intent to sell by a person who is not drug-dependent, and thus ordered a new trial on that charge; (2) affirmed the petitioner's conviction of criminal possession of a pistol or revolver but reversed the sentence imposed for that offense, and thus ordered that the petitioner be resentenced on that charge; and (3) affirmed the petitioner's conviction of possession of a weapon in a motor vehicle and possession of narcotics

with intent to sell within 1500 feet of a public housing project. Id., 820B.

On June 13, 2008, the petitioner commenced this action by filing his initial petition for a writ of habeas corpus. In his later amended petition filed July 22, 2011, on which this action was ultimately brought to trial, the petitioner claimed, to reiterate: (1) that his trial counsel, Attorney David Marantz, was ineffective in failing to object or except to the trial court's alleged failure to instruct the jury that it could not find him guilty under § 21a-278a (b) unless the state proved beyond a reasonable doubt that he not only possessed narcotics within 1500 feet of a public housing project with the intent to sell them, but also that he intended to sell such narcotics at a specific location, which location happened to be within 1500 feet of a public housing project; and (2) that his appellate counsel, Attorney Mark Rademacher, was ineffective in failing to raise claims of error on his direct appeal based upon both the trial court's alleged failure to instruct the jury on the intended-location-of-sale element of the charged offense and the alleged insufficiency of the evidence to prove that essential element beyond a reasonable doubt.

During a three day trial on the petitioner's amended petition, the habeas court reviewed transcripts of the petitioner's underlying criminal trial and considered written briefs and oral arguments from the parties as to the merits of those claims. In their arguments, the parties did not dispute that the trial court in the petitioner's trial was required to instruct the jury, inter alia, that one essential element of the offense of possession of narcotics with intent to sell within 1500 feet of a public housing project under § 21a-278a (b) was that the petitioner possessed narcotics with the intent to sell them at a specific location, which location happened to be within 1500 feet of a public housing project. As such,

their arguments were consistent with our Supreme Court's controlling decision in *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995), which expressly held, on the functionally identical charge of possession of narcotics with intent to sell within 1000 feet of a school under the pre-October, 1992 version of § 21a-278a (b), that to convict a defendant under that statute, the state was required to prove both that he possessed narcotics within the statutorily prohibited area with the intent to sell them, and that he did so with the intent "to sell or dispense [them] . . . at a specific location, which location happen[ed] to be within [the prohibited area]."

Our courts consistently have followed the rule of *Denby* in interpreting and enforcing the provisions of § 21a-278a (b), both in the ten year period preceding the petitioner's arrest; see, e.g., *State* v. *Player*, 58 Conn. App. 592, 597–98, 753 A.2d 947 (2000) ("§ 21a-278a [b] requires the state to prove beyond a reasonable doubt that the defendant intended to sell narcotics at a location that is within the 1500 feet zone"); *State* v. *Padua*, 73 Conn. App. 386, 808 A.2d 361 (2002) (hewing to analytic framework of *Denby*), rev'd in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005); and thereafter. See *State* v. *Lewis*, 303 Conn. 760, 770–71, 36 A.3d 670 (2012) ("[M]ere possession of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough [to prove a violation of § 21a-278a (b)]. . . . [Instead, the state must produce] evidence that the defendant engaged in conduct reflecting an intent to sell drugs at some location within the proscribed area . . . ." [Citations omitted; internal quotation marks omitted.]); *State* v. *Stovall*, 142 Conn. App. 562, 574, 64 A.3d 819 (2013) ("This court has held that the plain language of § 21a-278a [b] requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within

1500 feet of a public housing project, among other geographical designations. . . . There is no requirement that the state prove that the defendant had actual knowledge that the location where he intended to sell drugs was within the proscribed area . . . rather, the state must demonstrate only that the defendant intended to sell or dispense those drugs in his or her possession at a specific location, which location happens to be within 1500 feet of a public housing project, among other geographical designations." [Internal quotation marks omitted.]).

The parties also did not dispute before the habeas court that, if the trial court failed to instruct the jury on the intended-location-of-sale element of § 21a-278a (b), it committed a fundamental constitutional error that a reasonably competent criminal defense lawyer should have detected and sought to cure by objecting or excepting to the court's charge. Instead, the primary focus of the parties' dispute before the habeas court was whether the challenged instructions actually included a proper, sufficient charge on the intended-location-of-sale element of the charged offense. The petitioner claimed that the court's instructions violated the rule of *Denby* by misleading the jury to believe that it could find him guilty under § 21a-278a (b) as long as the state proved that he *possessed* narcotics within 1500 feet of a public housing project with the intent to sell them, regardless of where, in particular, he ultimately intended to sell them. The respondent, the commissioner of correction, disagreed, contending that all the essential elements of the charged offense, including the intended-location-of-sale element, were described adequately in the court's instructions.

On February 3, 2012, at the conclusion of its posttrial deliberations, the habeas court issued a memorandum of decision denying the amended petition. In its decision, the court explained its ruling as follows: "It is

the petitioner's claim that [the challenged] instruction allowed the jury to convict the petitioner for merely *possessing* drugs within the prohibited 1500 feet without also finding beyond a reasonable doubt the essential element that he also had the requisite *intent to sell* while within that prohibited area and that a reasonably competent criminal defense counsel should have objected to this instruction. This court finds that the instructions given by the criminal trial court in this matter sufficiently informed the jury of all essential elements of the crimes charged and, therefore, [the] petitioner has failed to establish that his trial counsel's performance was in any way deficient for failing to contest the instructions given regarding [this charge]. . . . Having found that the instructions given to the jury in the present case, as a whole, on the charge of [p]ossession with [i]ntent to [s]ell within 1500 feet of a [h]ousing [p]roject were legally sufficient, [the] petitioner's trial counsel cannot be said to have performed in a constitutionally deficient manner for failing to have raised a challenge to them. . . . Since . . . the instructions given by the trial court, as a whole, properly instructed the jury as to all elements of the crime charged, there can be no deficiency found in appellate counsel's performance for failing to raise a challenge on appeal." (Emphasis in original; footnotes omitted.) After the issuance of this decision, the petitioner filed a timely petition for certification to appeal, which the habeas court denied on February 23, 2012. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On this appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and that the court erroneously rejected his claims that he received ineffective assistance of trial counsel. We agree with the petitioner.

As an initial matter, we set forth the standard of review relevant to our resolution of this appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Rosado* v. *Commissioner of Correction*, 129 Conn. App. 368, 371–72, 20 A.3d 85, cert. denied, 302 Conn. 916, 27 A.3d 368 (2011).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts

found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citation omitted; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 429–30, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 295, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy." (Internal quotation marks omitted.) *Orellana* v. *Commissioner of Correction*, 135 Conn. App. 90, 98, 41 A.3d 1088, cert. denied, 305 Conn. 913, 45 A.3d 97 (2012).

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 128 Conn. App. 430.

Accordingly, in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, we must consider the merits of the petitioner's underlying claim that his trial counsel provided ineffective assistance. With the foregoing principles in mind, we now address the merits of the petitioner's claim.

Specifically, the petitioner contends that his trial counsel's failure to object or except to the trial court's charge on § 21a-278a (b), which allegedly failed to instruct the jury that it could not find the petitioner guilty under the statute unless the state proved beyond a reasonable doubt that the petitioner possessed narcotics with the intent to sell them at a specific location, which location was within 1500 feet of a public housing project, constituted ineffective assistance of counsel. We agree.

"It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). "The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *State* v. *Gabriel*, 192 Conn. 405, 413, 473 A.2d 300 (1984). Consequently, the trial court's failure to instruct a jury on an essential element of a charged offense is a fundamental constitutional error "because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) Id., 414.

One of the most important responsibilities of defense counsel in a criminal trial is to protect his client against conviction of any charged offense without proof beyond a reasonable doubt of each essential element of that offense. To ensure that the defendant receives such basic protection from an unconstitutional conviction, counsel is afforded not only the opportunity to submit requests to charge the jury on the essential elements of each charged offense, but to object to any of the state's requests to charge that misdescribe those elements or misstate the state's burden of proof with respect to them. Furthermore, even if counsel submits no requests to charge, he is afforded a final, fully effective opportunity to protect his client's right not to be convicted of any charged offense without proof beyond a reasonable doubt of each essential element of that offense by noting his exceptions to the trial court's charge, immediately after the charge is delivered to the jury. Regardless of counsel's particular trial strategy on behalf of his client, he simply has no excuse not to insist that the jury be properly instructed on each essential element of every charged offense by using one or more

of the previously described procedural vehicles. Because there is no conceivable tactical justification for defense counsel not to preserve his client's right not to be convicted without proof beyond a reasonable doubt of each essential element of each charged offense by insisting that proper jury instructions be given on those elements, counsel's failure to take timely steps to ensure that such instructions are given on each charge to protect his client from an unwarranted conviction on that charge constitutes deficient performance with respect to that charge, under the first, performance prong of *Strickland* v. *Washington*, supra, 466 U.S. 687, because it is "not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 295.

Proof of such deficient performance in failing to object or except to the omission of any such essential element from the court's charge, moreover, will almost invariably satisfy the second, prejudice prong of *Strickland* v. *Washington*, supra, 466 U.S. 687, because in the absence of any alternative way for the jury to learn the requirements of the law, the giving of such an incomplete instruction will invariably lead the jury to deliberate on the charged offense without determining if the state has proved the omitted element beyond a reasonable doubt. The only exceptional situation in which a different finding as to prejudice may be justified, on the theory of harmless error, is when the reviewing court, in examining the entire record, is "satisfied beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error." (Emphasis in original; internal quotation marks omitted.) *State* v. *Padua*, 273

Conn. 138, 170, 869 A.2d 192 (2005), quoting *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000).

Turning to the details of the parties' dispute as to the sufficiency of the trial court's instructions on the intended-location-of-sale element of the offense of possession of narcotics with intent to sell within 1500 feet of a public housing project under § 21a-278a (b), we note initially that the trial court gave substantive instructions to the jury on two separate occasions, both before the start of evidence and at the close of all the evidence, following the parties' closing arguments. Before the start of evidence, the court instructed the jury as follows on the elements of possession of narcotics with intent to sell within 1500 feet of a public housing project under § 21a-278a (b), as charged in the fourth count of the information: "[T]he final charge is, *any person who possesses narcotics with intent to sell—* possesses narcotics as charged with intent to sell those narcotics, as we just indicated, *and that possession is within 1500 feet of a public housing unit, would be guilty of that crime. We put emphasis on the place where the possession occurred, and that is one of the items, a public housing unit. So, the state must prove, again, that the [petitioner] was in possession,* he was the person in possession, he had possession of narcotics, *he had possession with intent to sell, and that he had this possession with intent to sell within 1500 feet of the perimeter of a public housing unit.*" (Emphasis added.)

Later, in its final charge to the petitioner's jury at the conclusion of the parties' closing arguments, the court once again described the essential elements of § 21a-278a (b), stating: "And the final issue here, on the fourth count, is *whether possession with intent to sell cocaine was within 1500 feet of the real property comprising a public housing project.* Our legislature has seen fit to create a separate charge with regard to possession

of narcotics with intent to sell depending on the location where it was possessed. And it is near a school, private or public school, near a nursery school, within the area of a public housing development, within 1500 feet of the perimeter of that public housing project, as being a more serious matter than just possession with intent to sell down on the street someplace not near any of these places. Because these are critical areas in our society where young children or other adults may apply. So, they created this statute. And it may arise out of the same set of circumstances.

"So, here again the state has to prove the same elements as in the third count. *That he possessed narcotics, that he knew he was in possession of narcotics, that the narcotics was cocaine, that it was in fact cocaine, and that he possessed it with intent to sell, exchange or transfer it to someone else, and that he did possess it within 1500 feet of a public housing unit.* Now, the parties have stipulated here, and you may accept as a fact proven that [the petitioner] was arrested within 1500 feet of the Colonial Village, which is a public housing project. So, they save the necessity of bringing in experts to testify to that. So, those are the charges, so that's the elements that have to be proven beyond a reasonable doubt." (Emphasis added.)

"When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995).

An examination of the entire jury charge in the present case reveals that it failed to instruct the jury on each essential element of the crime set forth in § 21a-278a (b). This statute, as previously noted, has been held to proscribe not merely *possession* of narcotics within 1500 feet of a public housing project with the intent to sell them somewhere, but possession of narcotics within that prohibited area with the intent to sell them within that very area. In this case, by contrast, the sole focus of the trial judge's initial charge to the jury with respect to the location where the prohibited activity must have occurred to constitute a violation of the statute was on the element of possession. The court thus expressly informed the jury that to violate the statute, a person who possesses narcotics with the intent to sell them must be shown to have possessed them within 1500 feet of a public housing project, without also informing the jury where, in particular, he must be shown to have intended to sell them. On that score, the trial judge expressly, but incorrectly, told the jury that "[w]e put emphasis on the place where the possession occurred," without explaining that the alleged perpetrator must also be shown to have intended that the sale itself would occur within that same proscribed area.

In similar fashion, the trial court's final instructions on the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project drew the jury's attention exclusively to the act of possessing narcotics as the prohibited conduct that must have occurred within 1500 feet of a public housing project in order to constitute a violation of the statute. Specifically, the judge informed the jury that "[o]ur legislature has seen fit to create a separate charge with regard to possession with intent to sell depending on the location where it was possessed." When specifying the elements of this charge to the jury, the judge stated that "the

state has to prove the same elements as in the third count. That he possessed narcotics, that he knew he was in possession of narcotics, that the narcotics was cocaine, that it was in fact cocaine, and that he possessed it with intent to sell, exchange or transfer it to someone else, *and that he did possess it within 1500 feet of a public housing unit.*" (Emphasis added.) At no time in this final charge did the trial court inform the jury that in order to convict the petitioner of the charged offense, the state had to prove beyond a reasonable doubt that he not only possessed narcotics within 1500 feet of a public housing project with the intent to sell them, but he possessed such narcotics with *the intent to sell them at a specific location, which location was within that statutorily proscribed area.*

Against this background, it is clear beyond question that the trial court's instructions to the petitioner's jury on the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project, as charged in the fourth count of the information, were constitutionally deficient because they omitted all reference to or explanation of the intended-location-of-sale element of that offense, as interpreted in *Denby* and its progeny. By the same token, the record also clearly established that, by failing to object or except to those deficient instructions at the petitioner's trial, defense counsel rendered a deficient performance "not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law," as required to establish ineffective assistance of counsel under the performance prong of *Strickland.* (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction,* supra, 130 Conn. App. 295. Thus, the only remaining question presented by the petitioner's claim of ineffective assistance of trial counsel is whether he has also satisfied the prejudice prong of *Strickland.*

The petitioner argues that he has proved prejudice both by establishing the absence of any proper instruction on the intended-location-of-sale element of the charged offense, which left the jury without any judicial guidance as to the necessity of finding that essential element proven beyond a reasonable doubt before finding him guilty of that offense, and by the trial court's occasional mislabeling of the charged offense in such a way as to focus the jury's consideration of the locational requirement of the statute on the completed act of possession of narcotics rather than the intended future act of selling such narcotics. On the latter subject, in particular, the petitioner notes that after the jury returned its verdict, the court caused the clerk to poll the foreperson as follows: "What say you, Madam [Foreperson], is he guilty or not guilty of the crime of possession of narcotics within 1500 feet of a public housing project with which he stands charged?" The charge in question, so misnamed by the clerk, could only have confirmed the trial court's erroneous instructions that only possession of narcotics need be shown to have occurred within 1500 feet of a public housing project to prove a violation of the controlling statute.

The respondent's countering argument on the prejudice prong of *Strickland* is that, even if the jury was misinstructed on the essential elements of the charged offense under § 21a-278a (b), any such error was harmless under the rule of *Montgomery* because the omitted, intended-location-of-sale element was *uncontested and supported by overwhelming evidence*. See *State* v. *Montgomery*, supra, 254 Conn. 738. This argument rests upon two essential constructs. First, it was stipulated by the parties that the location of the petitioner's arrest was within 1500 feet of a public housing project. Second, because the jury, by its verdict, necessarily found that the petitioner's act of possessing narcotics with the intent to sell them had taken place in the location

of his arrest, where he was then meeting with one or two individuals, Bruno and Sullivan, possibly to consummate a sale of narcotics, the jury's guilty verdict unquestionably would have been the same had it properly been instructed on the intended-location-of-sale element of the charged offense. For the following reasons, we find that argument unpersuasive.

Preliminarily, it is apparent that the parties' stipulation as to the location of the petitioner's arrest within 1500 feet of a public housing project made no mention of the intended location of any drug sale he may then have been intending to make. Thus, it hardly constituted a confession of the omitted element or removed that element from contest before the jury in the petitioner's trial. Furthermore, the evidence was by no means clear and uncontested, much less overwhelming, that the petitioner was engaged or about to engage in a drug sale at the time of his arrest within 1500 feet of a public housing project. He was not in fact caught in the act of selling drugs, to Bruno or anyone else. He was not found in possession of other implements of the drug sales trade. Indeed, it was suggested by certain police officers who testified at the petitioner's criminal trial that, if their enforcement efforts interrupted a drug sale at the scene of the arrest, it was a sale by Bruno to the petitioner, not a sale by the petitioner to Bruno. Such evidence falls far short of eliminating any reasonable doubt that had the jury been properly instructed on the intended-location-of-sale element of the charged offense, it still would have found the petitioner guilty under § 21a-278a (b).

We conclude, therefore, that the petitioner has established both prongs of his claim of ineffective assistance of counsel under the test of *Strickland* based upon his trial counsel's failure to object or except to the trial court's failure to instruct the jury on the intended-location-of-sale element of possession of narcotics with

intent to sell within 1500 feet of a public housing project. On that basis, we conclude further that the habeas court abused its discretion in denying the petitioner's petition for certification to appeal from its denial of his petition for a writ of habeas corpus.

The judgment is reversed and the case is remanded to the habeas court with direction to render judgment granting the petition for a writ of habeas corpus, vacating the petitioner's underlying conviction under § 21a-278a (b), and ordering a new trial on that offense.

In this opinion the other judges concurred.