******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHELDON SCHULER *v.* COMMISSIONER
OF CORRECTION
(AC 41886)

Lavine, Alvord and Bright, Js.*

*Syllabus*

The petitioner, who previously had been convicted of sexual assault in the
second degree, sought a writ of habeas corpus, claiming that his trial
counsel rendered ineffective assistance when he requested a jury instruc-
tion, which the trial court accepted and modified before instructing the
jury, that contained a mandatory presumption that, if the jury believed
that the petitioner's prior sexual misconduct had occurred, it was
required to find that that conduct supported a theory that the petitioner
had a propensity to commit similar criminal sexual misconduct. The
habeas court rendered judgment denying the habeas petition. Thereafter,
the petitioner filed a petition for certification to appeal using a Judicial
Branch form on which he marked a box that stated that his grounds
for appeal were written in a separate Judicial Branch form that pertained
to the application for the appointment of appellate counsel and the
waiver of fees, costs and expenses for the appeal to this court. The
petitioner failed to attach that application form to his petition for certifi-
cation to appeal. After the habeas court denied the petition for certifica-
tion to appeal because it did not state any grounds for appeal, the
petitioner filed an application for appointment of counsel form on which
he identified the proposed grounds for appeal. The habeas court there-
after granted the application for a waiver of fees, costs and expenses
and appointed appellate counsel, and the petitioner appealed to this
court. *Held* that the habeas court did not abuse its discretion in denying
the petition for certification to appeal: the habeas court was not apprised
of the issue or issues that the petitioner sought to raise on appeal, as
the petition for certification to appeal form did not state any grounds on
which he proposed to appeal, the petitioner did not attach the application
form to his petition for certification to appeal form, and, although the
petitioner claimed that the habeas court should have reasonably con-
cluded that he intended to appeal from the denial of his ineffective
assistance of counsel claim, the habeas court was left to speculate as
to what issue or issues he might have sought to raise on appeal, and
his concession that certain other potential claims fell outside the scope
of the habeas court's denial of certification to appeal did not negate his
failure before the habeas court; furthermore, the petitioner's ineffective
assistance of counsel claim was unavailing, as the trial court provided
the jury with limiting instructions concerning the evidence of his prior
sexual misconduct that were sufficient to counteract any ambiguity in
his counsel's requested instruction, the petitioner was not prejudiced
by the court's jury instruction, as the factual similarities between the
prior sexual misconduct and that with which he was charged made the
evidence of the prior misconduct so probative of his propensity to
commit similar misconduct that there was no reasonable probability
that the result of the trial would have been different, irrespective of
any ambiguity in the court's instruction regarding the petitioner's prior
sexual misconduct, and there was strong evidence to support the jury's
finding that the victim did not consent to sexual intercourse with the peti-
tioner.

Argued July 1—officially released October 6, 2020

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Hon. Edward J. Mullar-
key*, judge trial referee; thereafter, the petitioner with-
drew the petition in part; judgment denying the petition;
subsequently, the court denied the petition for certifica-

tion to appeal, and the petitioner appealed to this court. *Appeal dismissed*.

*Vishal K. Garg*, assigned counsel, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Gary Nicholson*, former senior assistant state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Sheldon Schuler, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he challenged his conviction of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3). On appeal, the petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied his ineffective assistance of counsel claim. We dismiss the appeal.

In its memorandum of decision, the habeas court quoted this court's decision in *State* v. *Schuler*, 157 Conn. App. 757, 118 A.3d 91, cert. denied, 318 Conn. 903, 122 A.3d 633 (2015), which summarized the facts reasonably found by the jury in the petitioner's underlying criminal case. "On January 27, 2012, the victim was celebrating her thirtieth birthday at her home with several friends and family members. Among those in attendance were the victim's three older sisters, CM, LM and SM, and the [petitioner]. The [petitioner] cohabitated with SM at the time and is the father of three of her children.

"During the party, the victim drank three shots of alcohol and one wine glass sized cup of vodka punch and smoked marijuana. At around 12 a.m., the victim started to take a sip of vodka punch when she felt a spinning sensation in her head. One of her sisters, CM, observed the victim stumble and noted that she appeared to be intoxicated. Shortly afterwards, the victim decided to go upstairs and lie down. After going upstairs, she felt cool air coming from a fan in her son's bedroom and decided to enter that room instead of her own bedroom. She lay down on the floor, hoping that the cool air would alleviate the spinning sensation in her head. When SM entered the room and asked the victim if everything was okay, the victim responded that something was wrong. The victim then removed her jewelry and shirt and fell asleep. SM noticed that the victim appeared to be intoxicated.

"At around 1:30 a.m., the party ended and SM and KS, a friend of the victim, went upstairs to say goodbye. SM placed the victim's cell phone near her head and told her that they had cleaned up and were going to leave. At that point, only CM, SM, KS, and the [petitioner] remained in the house. After locking the doors, CM drove SM and the [petitioner] to their home. KS left the victim's house separately.

"At approximately 1:40 a.m., SJ, the victim's boyfriend, arrived at the victim's house. He had been invited to the party but had been unable to attend. On his way over to the victim's house, he placed several calls to the victim's cell phone but received no response. Upon arriving at the house, he noticed that the lights were

on, and he proceeded to knock on the door, ring the doorbell, and shout into the mailbox slot. After receiving no response, SJ left the victim's house and went out with a friend. SJ testified that the victim was a very heavy sleeper, especially after consuming alcohol.

"Meanwhile, SM and the [petitioner] arrived back at their home. Just before 2:46 a.m., the [petitioner] told SM that he needed to go to the bank and to buy cigarettes. The [petitioner] walked several blocks from his house and then called a taxi using SM's cell phone. The taxi picked up the [petitioner] at 2:53 a.m. and dropped him off at the victim's house. The [petitioner] then entered the victim's house using keys given to him by SM earlier in the night.

"At approximately 3 a.m., the victim believed that she was dreaming that someone was on top of her, licking her breasts and vagina, and penetrating her vagina. When the victim awoke, she found the [petitioner] on top of her, subjecting her to sexual intercourse. She quickly pushed the [petitioner] off of her, screamed, and ran into her bedroom. Although it was dark in her son's room, she was able to identify the [petitioner] because the lights in her bedroom were on, casting light into her son's room. The victim heard the [petitioner] walk downstairs and then saw him, through an upstairs window, exit the house through the back door. The victim quickly located her car keys and cell phone, and drove to SM's home.

"As she was driving to SM's home, the victim contacted SJ on his cell phone. The victim was crying and more upset than SJ had ever witnessed her at any other time during their four year relationship. The victim would not explain to SJ what was wrong, but told him that she was driving to SM's home. When she arrived, the victim told SM what had happened. SM responded by stating her belief that the [petitioner] was at home, but after searching the home, she determined that he was not there.

"About ten to fifteen minutes later, SJ arrived at SM's home. As he was standing outside, the [petitioner] arrived. The [petitioner] approached SJ and said, 'Do you wanna fight?' SJ was confused by the question, as he had not yet been apprised of the evening's events. As a result, no confrontation occurred between him and the [petitioner], and the [petitioner] entered the home. When the [petitioner] entered, SM began to yell at him and hit him repeatedly. Initially, the victim ran away, but later she joined her sister in hitting the [petitioner]. Eventually, SJ pulled the victim away from the [petitioner], and together they left the premises in SJ's car.

"SJ then drove the victim to Yale-New Haven Hospital, where she was examined by a nurse with specialized training in treating victims of sexual assault. After

examining the victim, the nurse gathered evidence from her using a sexual assault evidence collection kit, and notified the police of the incident. During the examination, saliva was found on both of the victim's breasts and sperm was found in the victim's vagina. Subsequent testing of DNA extracted from the seized saliva and sperm samples revealed that it matched the [petitioner's] DNA.

"The [petitioner] was subsequently charged with one count of sexual assault in the second degree in violation of § 53a-71 (a) (3). On July 10, 2013, at the conclusion of trial, a jury found the [petitioner] guilty as charged. The court then sentenced the [petitioner] to ten years imprisonment, execution suspended after seven years, with fifteen years of probation." (Footnotes omitted.) Id., 759–62. Following his conviction, the petitioner appealed to this court, claiming that the trial court improperly (1) admitted evidence of his prior sexual misconduct toward the victim and (2) instructed the jury concerning such prior sexual misconduct evidence. Id., 758–59. This court affirmed the trial court's judgment of conviction; id., 759; and our Supreme Court denied the petitioner's petition for certification to appeal. *State* v. *Schuler*, 318 Conn. 903, 122 A.3d 633 (2015).

On February 27, 2015, the self-represented petitioner filed a petition for a writ of habeas corpus. On July 18, 2017, following the appointment of counsel, the petitioner filed an amended petition, in which he alleged that Christopher Y. Duby, defense counsel at his criminal trial, rendered ineffective assistance.[1] Following a trial on the amended petition, the habeas court issued a memorandum of decision on May 10, 2018, in which it denied the petitioner's claims. Thereafter, on May 16, 2018, the petitioner filed a petition for certification to appeal on Judicial Branch form JD-CR-84A (petition for certification form). The petition for certification form contains a section wherein a petitioner must set forth "[t]he grounds for [his] request for certification" by marking one of two boxes. By marking the first box, a petitioner indicates that his grounds for certification are "written in the Application for Waiver of Fees, Costs and Expenses and Appointment of Counsel on Appeal (Form JD-CR-73), which [he will be] submitting with [his] petition." By marking the second box, a petitioner indicates that his grounds for certification are stated on the petition for certification form, specifically in a lined space to the right of the second box and adjacent text stating, "(*Specify grounds, attach additional sheets if necessary*)." (Emphasis in original.)

In the present case, the petitioner marked the first box, signaling that his grounds for certification were written in the application for waiver of fees, costs and expenses and appointment of counsel on appeal form (application form) that he would attach to his petition

for certification form. The petitioner, however, failed to attach an application form to his petition for certification form. Moreover, on his petition for certification form, the petitioner neither marked the second box nor wrote his grounds for certification in the lined space to the right of the second box. Accordingly, no specific grounds for appeal were raised before the habeas court.

On June 15, 2018, the court denied the petitioner's petition for certification, writing on its denial: "No grounds stated; no fee waiver with grounds filed." On June 28, 2018, the petitioner filed his application form. The application form was dated May 16, 2018. In the space provided to write the "grounds on which [he] propose[d] to appeal," the petitioner wrote: "1.) Whether or not the court [erred] in not finding ineffective assistance of counsel. 2.) Any other issue that may become apparent after a review of the trial transcripts." On June 28, 2018, the court granted the petitioner's application for a waiver of fees, costs, and expenses, and appointed counsel. This appeal followed.

"We begin by setting forth the applicable standard of review and procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis omitted; internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 214–15, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

"As our standard of review . . . makes clear, an appeal following the denial of a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus is not the appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous. . . . Because

it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal." (Citation omitted.) Id., 216. In past decisions, "[t]his court has determined that a petitioner cannot demonstrate that a habeas court abused its discretion in denying a petition for certification to appeal on the basis of issues that were not actually raised in the petition for certification to appeal. . . . Under such circumstances, the petition for certification to appeal could not have apprised the habeas court that the petitioner was seeking certification to appeal based on such issues. . . . A review of such claims would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Stenner* v. *Commissioner of Correction*, 144 Conn. App. 371, 374–75, 71 A.3d 693, cert. denied, 310 Conn. 918, 76 A.3d 633 (2013).

On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and improperly denied his ineffective assistance of counsel claim. The record reflects that the petition for certification to appeal filed by the petitioner on May 16, 2018, failed to state *any* grounds on which he proposed to appeal, let alone that he sought to challenge on appeal the court's denial of his ineffective assistance of counsel claim. The petitioner neither wrote the grounds on which he proposed to appeal in his petition for certification form nor attached the application form, which purportedly contained his grounds for appeal, to his petition for certification form. As a result, the habeas court was not apprised of the issue or issues that the petitioner sought to raise on appeal when it ruled on his petition for certification to appeal on June 15, 2018. Therefore, there is no basis for us to conclude that the court abused its discretion in denying the petitioner's petition for certification because it was not called on to exercise any such discretion as to the issue the petitioner raises for the first time on appeal. See *Tutson* v. *Commissioner of Correction*, supra, 144 Conn. App. 216 ("it is impossible to review an exercise of discretion that did not occur"); see also id., 217 ("[t]his court has determined that a petitioner cannot demonstrate that the habeas court abused its discretion in denying a petition for certification to appeal if the issue that the petitioner later raises on appeal was never presented to, or decided by, the habeas court" (internal quotation marks omitted)).

The petitioner argues that, although his petition for certification "omitted a list of grounds on which [he] intended to appeal," we, nevertheless, can review the merits of his ineffective assistance of counsel claim on appeal because that was the "sole claim" raised in his petition for a writ of habeas corpus, and, thus, "the habeas court should have reasonably concluded that [he] intended to appeal the denial of that claim." We

disagree that the habeas court "reasonably" could have concluded that the petitioner sought to challenge on appeal only the denial of his ineffective assistance of counsel claim. Rather, in the absence of any stated grounds on which the petitioner proposed to appeal, the habeas court was left to *speculate* as to what issue or issues the petitioner might have sought to raise on appeal. For instance, in arguing that the habeas court "should have reasonably concluded that [he] intended to appeal the denial of" his ineffective assistance of counsel claim, the petitioner, in his appellate brief, "concedes that other claims, such as evidentiary claims or rulings on pretrial motions, fall outside the scope of the habeas court's denial of certification, and are not subject to this court's review." The petitioner's concession to this court on appeal does not alter the fact that, without having been apprised of the grounds on which the petitioner proposed to appeal, the habeas court could only guess whether he intended to challenge on appeal the court's denial of the sole claim alleged in his petition for a writ of habeas corpus or, instead, rulings on "evidentiary claims or . . . pretrial motions." Moreover, the petitioner's concession to this court on appeal does not negate his failure before the habeas court.[2] Accordingly, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal on the ground that it contained no specified grounds for appeal.[3]

We further determine that, even if we were to reach the merits of the petitioner's claim on appeal that the habeas court improperly denied his ineffective assistance of counsel claim, we would affirm the judgment of the habeas court.

On appeal, the petitioner argues that, at his criminal trial, Attorney Duby "filed a proposed jury instruction that informed the jury that, if it concluded that the petitioner had engaged in prior criminal sexual misconduct, it was *required* to conclude that he had a propensity to engage in such misconduct." (Emphasis in original.) The petitioner argues that Attorney Duby's proposed instruction, which the trial court accepted, "was unsupported by the law, which permits the jury to draw that conclusion, but does not require it," and, therefore, that his performance was deficient. The petitioner further argues that, but for Attorney Duby's deficient performance, the outcome of his criminal trial would have been different because the jury instruction (1) "drew the jury's attention to the fact that uncharged criminal sexual misconduct lent itself to the inference that an individual had a propensity to engage in that misconduct," and (2) "informed the jury that it was *required* to draw that inference as a matter of law" despite the fact that the "evidence supporting that inference was weak" and "the state's evidence against [him] on the question of consent was not strong." (Emphasis in original.)

The following additional facts are relevant to this claim. "On July 8, 2013, the first day of evidence at [the petitioner's criminal] trial, the [petitioner] filed a motion in limine, seeking a ruling that would preclude evidence related to a prior instance of sexual misconduct by the [petitioner]. . . . The state presented an offer of proof regarding the prior misconduct evidence, consisting entirely of testimony from the victim. The victim testified that during the summer of 2011, approximately six months prior to the charged sexual assault, she had had another nonconsensual sexual encounter with the [petitioner]. The victim stated that on that occasion, she had attended a bar with SM, the [petitioner], and several friends. While at the bar, she had consumed alcohol. Later that night, the [petitioner] drove SM and the victim back to the [petitioner's] home. Because the victim felt intoxicated, she decided to sleep in SM's daughter's bedroom, which was unoccupied that evening. She then went upstairs, took off her pants, locked the bedroom door, and went to sleep. At some point in the evening, she awoke to find the [petitioner] at the bottom of her bed with his head between her legs. The victim remembered that the [petitioner] was spreading her legs apart, attempting to perform oral sex upon her, and repeatedly saying, 'stop playing.' Upon awakening, she jumped out of bed and ran into a nearby bathroom.

"Defense counsel was then given an opportunity to cross-examine the victim and asked whether she and the [petitioner] had been involved in a consensual sexual relationship prior to the 2011 incident. The victim responded that they had not. . . . [T]he [trial] court ruled that the evidence was admissible." (Citation omitted.) *State* v. *Schuler*, supra, 157 Conn. App. 763–64.

"On July 8, 2013, after ruling on the admissibility of evidence related to the [petitioner's] prior sexual misconduct, the [trial] court stated that it would give limiting instructions to the jury after the testimony was presented and again in its final charge. . . .

"Upon the conclusion of the state's direct examination of the victim regarding the [petitioner's] prior sexual misconduct, the court gave the jury the following limiting instruction . . . . 'In a criminal case in which the [petitioner] is charged with a crime exhibiting aberrant and compulsive criminal sexual behavior, evidence of the [petitioner's] commission of another offense is admissible and may be considered for its bearing on any matter to which it is relevant; however, evidence of a prior offense on its own is not sufficient to prove the [petitioner] guilty of the crime charged in the information. Bear in mind as you consider this evidence that at all times the state has the burden of proving that the [petitioner] committed each of the elements of the offense charged in the information. I remind you that the [petitioner] is not on trial for any act, conduct, or offense not charged in the information.' . . .

"In its final charge to the jury, the court provided, inter alia, the following instruction: 'Next, I want to talk to you about other misconduct, uncharged sexual misconduct. Now, in a criminal case, ladies and gentlemen, in which the [petitioner] is charged with a crime exhibiting . . . criminal sexual misconduct, evidence of the [petitioner's] commission of another uncharged offense involving similar criminal sexual misconduct may be considered . . . for its bearing on any matter to which it is relevant, so long as you believe it, that the other sexual conduct did, in fact, occur and was, in fact, criminal misconduct. Consensual sexual contact is not criminal sexual misconduct.

" 'In this case, the state offered evidence of prior sexual contact between [the victim] and the [petitioner] in August, 2011. It is your job to determine, first, whether that prior sexual contact did, in fact, occur, and, second, if you believe it did occur, whether it was criminal misconduct. If you believe the prior sexual contact occurred and that it was criminal misconduct, then you must also find that it rationally and logically supports a theory that the [petitioner] had a propensity to commit similar criminal sexual misconduct. If, on the other hand, you find the prior sexual contact either did not occur or was not criminal misconduct, then you must also find that it does not tend to rationally or logically support a theory that the [petitioner] had a propensity to commit similar criminal sexual misconduct, and you must not consider the prior sexual misconduct evidence for any purpose as part of your deliberations but must ignore it altogether.

" 'You must keep in mind that evidence of . . . criminal sexual misconduct on its own is not sufficient to prove the [petitioner] is guilty of the crime charged in the information. Even if you determine the prior criminal sexual misconduct occurred, you must bear in mind that at all times the state still has the burden of proving that the [petitioner] committed each and every one of the elements of the offense charged in the information. I remind you that the [petitioner] is not on trial for any act, conduct, or offense not charged in the information, including any alleged prior sexual misconduct.' " Id., 770–73. The trial court's instruction regarding evidence of the petitioner's prior sexual misconduct during its final charge to the jury was adopted from a request to charge by Attorney Duby. Id., 774. The court added to Attorney Duby's proposed charge only that the prior sexual misconduct occurred in August, 2011. Id., 775.

In his direct appeal of his conviction, the petitioner argued; id., 774; as he does in this appeal, that the instruction requested by Attorney Duby contained a mandatory presumption in the following language: "If you believe the prior sexual contact occurred and that it was criminal misconduct, then *you must also find* that it rationally and logically supports a theory that the

[petitioner] had a propensity to commit similar criminal sexual misconduct . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 776. This court, when reviewing the instruction for plain error,[4] concluded that the petitioner's interpretation of the instruction that it contained a mandatory presumption was "not the only reasonable one." Id., 776. This court "[t]hus . . . conclude[d] that the statement was, at most, ambiguous . . . ." Id., 777.

The following standard of review and legal principles are applicable to this claim. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 363–64, 77 A.3d 777 (2013). "With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) Id., 365.

We need not address whether Attorney Duby performed deficiently by requesting the jury instruction on which the petitioner's claim is based because we conclude that the petitioner was not prejudiced by the instruction.[5] We reach this conclusion for three reasons.

First, the striking factual similarities between the petitioner's prior sexual misconduct from August, 2011 (prior misconduct), and his charged sexual misconduct from January, 2012 (charged misconduct), made the evidence of the prior misconduct so probative of the petitioner's propensity to commit similar misconduct that there is no reasonable probability that the result of the trial would have been different, irrespective of

any ambiguity in the court's instruction regarding the petitioner's prior sexual misconduct. The victim was the subject of both the petitioner's prior and charged misconduct, which incidents occurred within a six month period. *State* v. *Schuler*, supra, 157 Conn. App. 763. On both occasions, the victim was asleep when she awoke to the petitioner sexually violating her. Id., 760, 763. Each time the victim was intoxicated prior to going to sleep. Id., 759, 763. According to the victim's boyfriend, SJ, the victim was a "very heavy sleeper, especially after consuming alcohol." Id., 760. Each time, when the victim awoke to the petitioner sexually violating her, she reacted by immediately stopping the petitioner and quickly exiting the room. Id., 760, 763. These factual similitudes would be difficult for a jury to ignore when considering whether the prior misconduct supported a finding that the petitioner had a propensity to commit similar sexual misconduct.

Second, there was strong evidence to support the jury's finding that the victim did not consent to sexual intercourse with the petitioner. At some time after 12 a.m., both of the victim's sisters, CM and SM, observed the victim to be intoxicated prior to her falling asleep. Id., 759. Combined with SJ's testimony that the victim was a deep sleeper when she was intoxicated; id., 760; the jury reasonably could infer that the victim remained asleep until awoken by the petitioner's having sexual intercourse with her at about 3 a.m. and, accordingly, could not have consented to that intercourse with the petitioner.

Perhaps the strongest evidence to support the finding that the victim did not consent to sexual intercourse with the petitioner was the several actions she took immediately upon being awakened to the petitioner's having sexual intercourse with her. The victim "quickly pushed the [petitioner] off of her, screamed, and ran into her bedroom." Id., 760. After the petitioner left her home, at approximately 3 a.m., the victim "quickly located her car keys and cell phone, and drove to SM's home." Id., 760–61. The victim called SJ while en route to SM's home; she was "crying and more upset than SJ had ever witnessed her at any other time during their four year relationship." Id., 761. After arriving at SM's home, the victim told SM what the petitioner did to her. Id. When the petitioner arrived at SM's home some ten to fifteen minutes after the victim, "SM began to yell at him and hit him repeatedly. Initially the victim ran away, but later she joined her sister in hitting the [petitioner]." Id. Thereafter, the victim was driven by SJ to the hospital, "where she was examined by a nurse with specialized training in treating victims of sexual assault." Id. All of the actions taken by the victim after awaking to discover the petitioner having sexual intercourse with her were corroborated by other witnesses and are consistent with someone who had not consented to such intercourse.

By contrast, at his criminal trial, the petitioner failed to present any evidence to corroborate his testimony that, prior to his sexual contact with the victim in January, 2012, they had an arrangement in which he paid her for sex and, in accordance with that prior arrangement, they had consensual sexual intercourse in January, 2012. The evidence from several witnesses as to the victim's actions in the instant aftermath of awaking to find the petitioner having sexual intercourse with her and the dearth of evidence corroborating the petitioner's testimony concerning consent, reflect, contrary to the petitioner's argument, that the case against the petitioner was very strong, further undermining a claim that any ambiguity in the court's charge affected the outcome of the petitioner's criminal trial.

Third, the trial court provided the jury with limiting instructions concerning the evidence of the petitioner's prior sexual misconduct following the state's direct examination of the victim; id., 771; and in its final charge. Id., 771–72. Specifically, the jury was instructed that evidence of the petitioner's prior sexual misconduct "on its own [was] not sufficient to prove the [petitioner] guilty of the crime charged in the information," that "at all times the state [had] the burden of proving that the [petitioner] committed each of the elements of the offense charged in the information," and that the petitioner was "not on trial for any act, conduct, or offense not charged in the information." (Internal quotation marks omitted.) Id., 771; see also id., 773; see generally *Hickey* v. *Commissioner of Correction*, 329 Conn. 605, 620, 188 A.3d 715 (2018) ("[i]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge" (internal quotation marks omitted)). We conclude that the trial court's limiting instructions to the jury were sufficient to counteract any ambiguity that existed in the propensity instruction requested by Attorney Duby.

Accordingly, even if we were to excuse the petitioner's failure to state the grounds on which he proposed to appeal in his petition for certification, we, nonetheless, would conclude that he could not satisfy the second, prejudice prong of *Strickland* v. *Washington*, supra, 466 U.S. 687. Thus, his ineffective assistance of counsel claim would fail.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Specifically, the petitioner alleged that Attorney Duby rendered ineffective assistance by (1) conceding that evidence of the petitioner's prior sexual misconduct was admissible under *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), (2) failing to object to a limiting instruction provided by the trial court to the jury following the state's direct examination of the victim, (3) submitting an improper request to charge regarding evidence of the petitioner's prior sexual misconduct, which the trial court adopted in its instructions to the jury, and (4) referring to the petitioner's character for untruthfulness several times during his closing argument. The petitioner

further alleged that Attorney Duby's errors, "both independently and cumulatively," constituted ineffective assistance of counsel.

At trial on the amended petition, the petitioner withdrew his first two claims.

[2] The petitioner argues that, "[i]t is notable that, in virtually every case in which this court declined to review a claim because it was omitted from the petition for certification to appeal, the claim this court declined to review was not the primary claim in the proceeding below." We reject the invitation to condone the petitioner's failure to state in his petition for certification the grounds on which he proposed to appeal because he had alleged one claim, as opposed to multiple claims, in his petition for a writ of habeas corpus. As the petitioner seemingly acknowledges with his concession on appeal, even in petitions for a writ of habeas corpus in which a petitioner alleges one claim, there may be subsidiary issues arising from the trial of that claim from which he or she might want to appeal. Furthermore, as set forth previously in footnote 1 of this opinion, the petitioner alleged that his trial counsel committed four different errors, each of which constituted ineffective assistance of counsel. Yet, he challenges only the court's conclusion as to one of those alleged errors. Consequently, even though the petitioner asserted only one "claim," he made multiple arguments to the court, and his failure to identify the issue that he wanted to raise on appeal deprived the court of the ability to exercise properly its discretion to consider the specific issue that the petitioner has raised before us.

[3] In his brief, the petitioner states that "the omission of grounds for appeal in the petition for certification appears to have been an administrative oversight on the part of habeas counsel, rather than the fault of the petitioner." We cannot determine the accuracy of the petitioner's appellate statement on the basis of the record before us. Nonetheless, we cannot conclude that the habeas court abused its discretion in denying the petitioner's petition for certification because, regardless of who is at fault for this alleged oversight, the petition for certification form did not state the grounds for appeal or have attached to it the application form stating those grounds.

[4] The instruction was reviewed for plain error because it was requested by the petitioner's defense counsel, Attorney Duby, and, thus, if improper, would have constituted induced error that "may not form the basis of a reversal." *State* v. *Schuler*, supra, 157 Conn. App. 775; see also id. (plain error doctrine is "a rule of reversibility" that "this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy" (internal quotation marks omitted)).

[5] Attorney Duby's requested instruction did not pertain to an essential element of the petitioner's charged offense. Accordingly, we do not analyze prejudice in this case under the standard employed in *Holloway* v. *Commissioner of Correction*, supra, 145 Conn. App. 367 ("Proof of such deficient performance in failing to object or except to the omission of any such essential element from the court's charge . . . will almost invariably satisfy the second, prejudice prong of *Strickland* . . . because in the absence of any alternative way for the jury to learn the requirements of the law, the giving of such an incomplete instruction will invariably lead the jury to deliberate on the charged offense without determining if the state has proved the omitted element beyond a reasonable doubt. The only exceptional situation in which a different finding as to prejudice may be justified, on the theory of harmless error, is when the reviewing court, in examining the entire record, is satisfied beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." (Emphasis omitted; internal quotation marks omitted.)).