******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICARDO MYERS *v.* COMMISSIONER
OF CORRECTION
(AC 44679)

RICARDO O. MYERS *v.* STATE
OF CONNECTICUT
(AC 44736)

Bright, C. J., and Prescott and Moll, Js.

*Syllabus*

The petitioner, who had been convicted of murder and assault in the first
degree in connection with a shooting, filed, in one case, a petition for
a writ of habeas corpus and, in a second case, a petition for a new trial.
Six days after the shooting, R gave a video recorded interview to the
police, in which he admitted to being present at the shooting and identi-
fied another individual, P, as the shooter. R subsequently failed to appear
at the petitioner's criminal trial, even though the petitioner's trial counsel
had served him with a subpoena ad testificandum. The trial court issued
a capias warrant for R and continued the case for the weekend at the
request of trial counsel, but R could not be located. Rather than request
an additional continuance to give the authorities additional time to
locate R and execute the capias, trial counsel moved to admit the video
recording of R's interview under the residual exception to the hearsay
rule, but the trial court concluded that it was inadmissible. In his habeas
petition, the petitioner alleged actual innocence and ineffective assis-
tance of counsel, insofar as trial counsel failed to undertake greater
efforts, after learning that the capias warrant had not been served, to
secure R's presence and testimony at the criminal trial. Thereafter, R
was served with a subpoena to appear at the petitioner's habeas trial,
but he again failed to appear. The petitioner requested a capias warrant
to secure R's attendance and a continuance for the purpose of locating
R and executing the capias, but the habeas court denied the requests.
Following the habeas trial, the habeas court denied the habeas petition
and, thereafter, granted the petition for certification to appeal. In his
petition for a new trial, the petitioner claimed that R's statement to the
police identifying P as the shooter constituted newly discovered evi-
dence that was likely to produce a different result in a new trial. The
respondent in that case, the state of Connecticut, moved for summary
judgment on the ground that the petition for a new trial was filed outside
the applicable statute of limitations (§ 52-582) and, therefore, was time
barred. In response, the petitioner argued that the petition was not time
barred because that statute includes an exception for petitions, like his,
that are "based on DNA (deoxyribonucleic acid) evidence or other newly
discovered evidence . . . that was not discoverable or available at the
time of the original trial," which "may be brought at any time after the
discovery or availability of such new evidence . . . ." The trial court
granted the respondent's motion for summary judgment, noting, inter
alia, that there was no support for the position that the unavailability
of a witness was the equivalent of newly discovered evidence. Accord-
ingly, the court dismissed the petition for a new trial and denied the
petitioner's petition for certification to appeal therefrom. *Held*:

1. The habeas court properly denied the petition for a writ of habeas corpus,
   and, accordingly, this court affirmed the habeas court's judgment in
   that case:

   a. The habeas court correctly concluded that the petitioner failed to prove
   that his trial counsel rendered deficient performance by not undertaking
   greater efforts to secure R's testimony after learning that the capias
   warrant had not been served: trial counsel testified at length at the
   habeas trial about his efforts to secure R's appearance and testimony
   at trial, which included retaining a private investigator to locate R, having
   a subpoena served on R, following up with R prior to trial, obtaining
   the weekend continuance, and moving to admit the video recording of
   R's interview into evidence pursuant to the residual hearsay exception;
   moreover, this court could not conclude that trial counsel's failure to

request a second continuance amounted to ineffective assistance or that it was unreasonable for trial counsel to conclude that additional attempts to locate R would have been in vain, especially in light of R's previous success at evading authorities, and the petitioner did not overcome the presumption that trial counsel's decision not to further delay the criminal trial by continuing the search for R was sound trial strategy, given that additional efforts to locate R might have resulted in jurors becoming unavailable or the jurors' memories fading; furthermore, trial counsel's decision to seek to admit the video recording under the residual exception in lieu of undertaking further efforts to locate R was reasonable, despite the rare application of the residual exception, given the circumstances of the petitioner's criminal case.

b. The petitioner could not prevail on his claim that the habeas court improperly denied his actual innocence claim, which was premised on his argument that, by denying his request for a capias warrant and a continuance to secure R's testimony at the habeas trial, the habeas court prevented the petitioner from proving that P was the shooter: even if it is assumed that the habeas court abused its discretion by denying the requests for a capias warrant and a continuance, any error was harmless because, even had R testified at the habeas trial consistent with his video recorded interview, that testimony was not sufficient to establish, by clear and convincing evidence, that the petitioner was actually innocent of the charged crimes; in the present case, R's testimony identifying P as the shooter could not have unquestionably established the petitioner's innocence as it would not have negated the evidence of the petitioner's guilt that was admitted at his criminal trial, including eyewitness testimony that it was the petitioner who shot the victim, the fact that the gun used in the shooting was owned by the petitioner and found in his possession one month afterward, and the fact that the petitioner made no effort at his habeas trial to undermine the evidence pointing to his guilt.

2. The trial court properly dismissed the petitioner's petition for a new trial, as R's video recorded interview did not constitute newly discovered evidence under § 52-582, and, accordingly, this court dismissed the petitioner's appeal in that case: because the language of § 52-582 was ambiguous with respect to whether "newly discovered evidence," as used therein, included both forensic evidence and all other types of evidence or, instead, only evidence that was forensic in nature, this court looked to the statute's legislative history, and especially a recent amendment (P.A. 18-61) expanding the circumstances in which a petition for a new trial may be filed after the limitation period had otherwise run, which indicated the legislature's intent to narrowly define newly discovered evidence, for purposes of § 52-582, to include only forensic evidence; in the present case, because the petitioner's untimely petition for a new trial was not based on newly discovered forensic evidence but, rather, R's statement to the police identifying P as the shooter, the trial court correctly concluded that the petition for a new trial was time barred and that it lacked subject matter jurisdiction over it.

(*One judge concurring in part and dissenting in part*)

Argued May 9—officially released October 11, 2022

*Procedural History*

Amended petition, in the first case, for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court, and petition, in a second case, for a new trial following the petitioner's conviction of the crimes of murder and assault in the first degree, brought to the Superior Court in the judicial district of New Haven, where the court, *Young, J.*, dismissed the petition; thereafter, the court, *Young, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Affirmed in Docket No. AC 44679; appeal dismissed in Docket No. AC 44736.*

*Vishal K. Garg*, for the appellant in Docket Nos. AC 44679 and AC 44736 (petitioner).

*Linda Frances Rubertone*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, former state's attorney, and *Craig Nowak*, senior assistant state's attorney, for the appellee in Docket No. AC 44679 (respondent).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, former state's attorney, and *Craig Nowak*, senior assistant state's attorney, for the appellee in Docket No. AC 44736 (state).

*Opinion*

MOLL, J. These two appeals arise out of two postconviction actions filed by the petitioner, Ricardo Myers. In Docket No. AC 44679, the petitioner appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly (1) concluded that he failed to show that his trial counsel had performed deficiently, (2) rejected his actual innocence claim, and (3) determined that his due process rights were not violated. The petitioner further claims that the habeas court erred in denying his request for a capias and a continuance so that the petitioner could secure the appearance of an exculpatory witness at his habeas trial. In Docket No. AC 44736, the petitioner appeals, following the denial of his petition for certification to appeal, from the judgment of the trial court dismissing his petition for a new trial. The petitioner claims on appeal that the trial court erred in determining that his petition for a new trial was time barred pursuant to General Statutes § 52-582. As to AC 44679, we affirm the judgment of the habeas court. As to AC 44736, we dismiss the petitioner's appeal.

The following facts, as set forth by this court in the petitioner's direct appeal from his conviction and as supplemented by the record, and procedural history are relevant to our resolution of both appeals. "On May 17, 2013, the [petitioner], along with Dwight Crooks and Gary Pope, was at the Lazy Lizard club in New Haven. The club let out during the early hours of May 18, 2013, and the trio made its way out with the crowd. Once outside, an argument ensued between the [petitioner's] group and another group that was across the street. The argument escalated to a physical altercation before officers of the New Haven police stepped in and caused the groups to disperse. The [petitioner] and his friends then got into Pope's car and drove around before parking in a different lot not far from the club. The three then headed out on foot to meet someone they knew when they encountered again the group from [the] Lazy Lizard. Some provocative remarks were made and the two groups moved toward each other. Crooks testified at trial that, at this point, he heard gunshots, and he turned to see the [petitioner] holding a gun. Two bullets struck and killed Tirrell Drew, who was a member of the other group, and stray bullets injured two bystanders. The bullets recovered from Drew's body were found to have been fired from a .40 caliber semiautomatic Glock handgun owned by the [petitioner] and seized from his residence by the police on June 14, 2013, nearly a month after the shooting.

"The [petitioner] subsequently was arrested and charged with murder and two counts of assault in the first degree. . . . [S]ix days after the shooting, a person

named Latrell Rountree, while in custody on an unrelated matter, revealed to the police that he was Drew's friend and was present when Drew was shot. Rountree identified Pope as the shooter." *State* v. *Myers*, 178 Conn. App. 102, 103–104, 174 A.3d 197 (2017). Rountree's interview with the police was video recorded.

The petitioner planned to call Rountree as a witness at his criminal trial and intended to use his testimony about the shooting as the basis for a third-party culpability defense. Id., 104. The petitioner's trial counsel believed that Rountree's identification of Pope as the shooter was the strongest piece of evidence that the defense had to support its theory of defense.[1] To that end, trial counsel hired Daniel Markle, a private investigator, to locate Rountree and serve him with a subpoena ad testificandum.

Markle located Rountree on May 28, 2015, after two and one-half weeks of searching and on the third day of the petitioner's criminal trial. That same day, Markle met Rountree at a McDonald's in North Haven and served him with a subpoena commanding him to appear in court the following day, May 29, 2015. According to Markle, Rountree was not happy to be served with the subpoena and left it behind after reading it.

On May 29, 2015, Rountree failed to appear in court. Trial counsel then requested that the court issue a capias warrant pursuant to General Statutes § 54-2a in order to secure Rountree's attendance.[2] After Markle testified that he had located Rountree the day before and had served him with a subpoena, the court granted trial counsel's request, stating: "Court's exhibit 3 reflects the fact that Mr. Rountree was commanded to appear in court today, May 29, at 9:30 a.m. to testify in this proceeding. Obviously, he is not here. We have had no contact from him. Therefore, the court is going to authorize pursuant to statute a capias to secure his appearance. This matter will be continued until Monday, at which time that will give the authorities the rest of today, tonight, tomorrow, and Sunday to attempt to serve him and bring him to court."

The authorities, however, were unable to locate Rountree by Monday. After learning that Rountree had not been found, trial counsel did not ask for a continuance or request that the authorities be given additional time to locate him. Instead, trial counsel moved to admit into evidence the video recording of Rountree's interview with the police, in which Rountree had identified Pope as the shooter. The court ruled that the recording was not admissible under the residual exception to the hearsay rule[3] because it did not bear the requisite indicia of trustworthiness and reliability necessary for admission under the exception.[4] See *State* v. *Myers*, supra, 178 Conn. App. 104–105; id., 105 n.2. Thereafter, the parties rested, and the matter was submitted to the jury. "On June 3, 2015, the jury found the [petitioner]

guilty on all three counts, and the court rendered judgment accordingly." Id., 105.

The petitioner then appealed from his judgment of conviction to this court, claiming that the trial court had abused its discretion in refusing to admit into evidence the video recording in which Rountree identified Pope as the shooter. We affirmed the judgment of the trial court, concluding that, because "the jury reasonably could have found that the [petitioner] shot Drew to death . . . we are not convinced that any harm resulting from the exclusion of Rountree's interview is self-evident in light of the evidence presented at trial." Id., 108. We further held that, "because the [petitioner] failed to brief and analyze . . . the resulting harm from the court's exclusion of the video recording," we would not consider whether the trial court abused its discretion. Id. Additional facts and procedural history will be set forth as necessary.

## I

## AC 44679

On appeal, the petitioner challenges the habeas court's denial of his amended petition for a writ of habeas corpus, wherein he asserted that (1) his trial counsel was ineffective for failing to secure the testimony of Rountree and (2) he was actually innocent based on Rountree's identification of someone else as the shooter.[5] The petitioner further claims that the habeas court abused its discretion when it denied his request to issue a capias warrant and to grant a continuance in order to secure Rountree's attendance and testimony at the petitioner's habeas trial.

We first set forth the following additional facts and procedural history, which are relevant to our resolution of these claims. On March 16, 2020, the self-represented petitioner filed a three count amended petition for a writ of habeas corpus, which is the operative habeas petition in the present case.[6] In count one, the petitioner alleged that his right to effective assistance of counsel had been violated because his trial counsel had failed: (1) "to request [an] adjournment to locat[e] [Rountree]," (2) "to proffer a written or verbal request to the court for a third-party culpability jury instruction," (3) "to adequately search for [Rountree]," and (4) "to investigate to ensure the execution of [a] capias warrant." In count two, the petitioner alleged that he was actually innocent, based on Rountree's identification of Pope as the shooter. Last, in count three, the petitioner alleged that his state and federal due process rights had been violated by (1) the state marshal service's failure to execute the capias warrant and (2) the court clerk's failure to follow the proper procedures for issuing the capias warrant. See footnote 5 of this opinion.

On May 5, 2020, the respondent, the Commissioner of Correction, filed a return to the amended habeas

petition, wherein he admitted the petitioner's procedural allegations but otherwise left the petitioner to his proof. Thereafter, on July 24, 2020, the petitioner filed two separate applications for issuance of subpoenas by a self-represented party pursuant to Practice Book § 7-19,[7] seeking subpoenas for his trial counsel, Rountree, and Markle.[8] On August 12, 2020, the habeas court granted the petitioner's applications, and subpoenas later were issued and served on trial counsel, Rountree, and Markle.[9]

It was the petitioner's belief, based on the information available on the Department of Correction's website, that Rountree would be released from custody after the last scheduled trial date of October 8, 2020. In late September, 2020, however, the petitioner learned that Rountree's release date had been changed and that Rountree was scheduled to be released on October 2, 2020. The petitioner then filed, through his standby counsel, a motion to move the scheduled habeas trial date of October 8, 2020, to October 1, 2020, to ensure that Rountree would appear and testify. The motion further stated that, "[i]f Rountree is released, there is a significant chance that he will not honor a subpoena to testify at the petitioner's habeas trial, much the way he did at the petitioner's criminal trial." The court denied the motion to change the trial date without prejudice, stating that the requested date was unavailable.

A two day habeas trial was held on October 7 and 8, 2020. The petitioner, assisted by standby counsel, represented himself at the trial. On October 7, 2020, he presented testimony from his trial counsel and Markle.

Trial counsel testified about the steps he took to locate Rountree and to secure his attendance at the petitioner's criminal trial. Trial counsel specifically testified that he had subpoenaed Rountree for the criminal trial and that the subpoena was successfully served, but that Rountree failed to appear in court. Trial counsel further stated that, after Rountree failed to appear, he requested a capias warrant and the requested capias warrant was issued, but Rountree could not be located. Trial counsel also stated that it was not his responsibility to follow up on the capias warrant and, thus, he could not testify as to what steps the state marshals took when trying to find Rountree. Last, trial counsel testified that when it became clear on Monday that Rountree was not going to appear, he developed another strategy for introducing his testimony, specifically, by "hav[ing] the judge find Mr. Rountree not available and attempt[ing] to admit his videotaped statement into evidence in place of his testimony."

Markle testified about what he did to locate Rountree and to serve him with the subpoena. Markle stated that it took him about two and one-half weeks to find Rountree and that he was a "middle of the road" person to locate. Markle further testified that it might have

been "possible" to locate Rountree a second time. Last, Markle stated that trial counsel never asked him to assist the state marshals in their search for Rountree.

On October 8, 2020, the petitioner sought to present testimony from Rountree. Rountree, however, failed to honor his subpoena and did not appear in court. The petitioner then presented testimony from Salvatore Viglione, a private investigator whom the petitioner's family had hired to locate and communicate with Rountree. Viglione testified that he had met with Rountree several months earlier at the Willard-Cybulski Correctional Institution in Enfield, where Rountree was incarcerated at the time. Viglione also stated that he exchanged phone calls and text messages with Rountree after he was released from custody on October 2, 2020. Viglione further testified that, on October 7, 2020, Rountree called him from a "throwaway phone"[10] with a New Jersey area code to tell Viglione that he had changed his mind about testifying. When speaking with Rountree, Viglione asked him where he was, but Rountree declined to say.

The petitioner then requested that the habeas court issue a capias warrant to secure Rountree's attendance and to grant a continuance for the purpose of locating Rountree and executing the capias. As to the continuance, the petitioner initially asked for a continuance "until such time as the court resume[s] [in-person] hearings," unless the state marshals were able to find Rountree earlier. The petitioner later indicated that a one month continuance would be sufficient. The court denied both requests, stating: "[N]oting [Rountree's] potential presence in New Jersey, his unwillingness to indicate his location, and his specific unwillingness to [testify], it's certainly a similar situation [as] at the underlying trial. And in this court's discretion I see no reasonable basis to grant this capias, also no reasonable basis to simply continue this matter for such purpose. The capias request is denied and the motion for a continuance is denied." The petitioner then rested his case without presenting testimony from Rountree.

In a memorandum of decision dated November 23, 2020, the court denied the petitioner's habeas petition. As to the petitioner's ineffective assistance of counsel claim, the court found that the petitioner had failed to prove that his trial counsel had rendered deficient performance because the evidence introduced at trial demonstrated that trial counsel had made repeated attempts to secure Rountree's appearance and that, when those efforts failed, attempted to introduce video recorded evidence of Rountree's testimony instead.[11] The court further held that, even if trial counsel's performance had been deficient, because Rountree did not testify at the habeas trial, the court was unable to determine whether any prejudice had occurred. The court next denied the petitioner's actual innocence claim on

the grounds that "[t]he petitioner has not presented any newly discovered evidence in support of his actual innocence claim" and "there is no evidence that satisfies the clear and convincing standard" for such claims. Last, the court concluded that the petitioner's due process claim failed because insufficient evidence was presented to substantiate the claim. On November 23, 2020, the petitioner filed a petition for certification to appeal, which the habeas court granted. The present appeal followed.[12]

## A

### Ineffective Assistance of Counsel

As previously stated, in his amended petition for a writ of habeas corpus, the petitioner alleged that his trial counsel was ineffective in four separate ways. On appeal, however, the petitioner concedes in his principal appellate brief that the "gravamen of the petitioner's [ineffective assistance] claim is that [trial counsel] failed to request an adjournment to search for and locate [Rountree] and secure via a capias his presence at the criminal trial." (Internal quotation marks omitted.) More specifically, the petitioner claims that the habeas court improperly concluded that he failed to show that his trial counsel performed deficiently by failing to undertake greater efforts to secure Rountree's testimony after learning that the capias warrant had not been served. We are not persuaded.

We begin by setting forth the law governing claims of ineffective assistance of counsel and the corresponding standard of review. "In *Strickland* v. *Washington*, [466 U.S. 668, 687,104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 364–65, 77 A.3d 777 (2013).

Moreover, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. . . . Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . Thus, a court deciding an [ineffective assistance] claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." (Citations omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 688–90.

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, supra, 145 Conn. App. 365.

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard [of review]." (Internal quotation marks omitted.) *Leconte* v. *Commissioner of Correction*, 207 Conn. App. 306, 319–20, 262 A.3d 140, cert. denied, 340

Conn. 902, 263 A.3d 387 (2021).

On the basis of our careful review of the record, we conclude that the habeas court properly found that the petitioner failed to prove that trial counsel's failure to secure the testimony of Rountree amounted to deficient performance.

On appeal, the petitioner claims that trial counsel's efforts to secure Rountree's testimony were insufficient and amounted to ineffective assistance because, after learning that Rountree had not been taken into custody following the issuance of the capias warrant, trial counsel undertook no additional efforts to secure his appearance. Specifically, the petitioner contends that trial counsel should have asked for a second continuance during which trial counsel and the state marshals could have continued looking for Rountree. The petitioner further argues that trial counsel "was not absolved of his obligation to seek additional time to secure Rountree's presence simply because counsel had an alternative strategy of offering Rountree's video recorded statement," given that "[r]easonably competent counsel would have recognized that seeking admission of a video-recorded statement under the residual exception to the hearsay rule was a longshot . . . ." Last, the petitioner argues that trial counsel provided ineffective assistance because he abdicated responsibility for ensuring that the capias warrant was served on Rountree by not following up with the state marshal service regarding the marshals' efforts to locate Rountree. Conversely, the respondent claims that trial counsel's performance was reasonable because Rountree's failure to appear was unrelated to anything trial counsel did and because trial counsel took reasonable steps to secure his attendance. The respondent further argues that trial counsel's backup plan of offering Rountree's recorded statement into evidence was also reasonable, given the particular circumstances of this case. We agree with the respondent.

During the habeas trial, trial counsel testified at length about his efforts to secure Rountree's testimony. Upon learning that Rountree had identified someone other than the petitioner as the shooter, trial counsel hired a private investigator, Markle, to locate Rountree, which Markle was able to do. Prior to the criminal trial, trial counsel secured a subpoena for Rountree's appearance and Markle was able to successfully serve that subpoena on Rountree. When Rountree failed to appear, trial counsel then requested that the court issue a capias warrant. The court granted that request and continued the trial to the following Monday, so that Rountree could hopefully be located and brought to court to testify. That Monday, however, when trial counsel spoke with the state marshal service, he learned that the marshals had been unable to locate Rountree. Thereafter, trial counsel moved for the court to admit

into evidence the recorded interview of Rountree pursuant to the residual hearsay exception, but the trial court denied that motion.

Despite the fact that Rountree's testimony was never presented to the jury in the petitioner's criminal trial, the petitioner failed to prove that the efforts that trial counsel undertook to try to secure his testimony were objectively unreasonable. Although trial counsel could have requested a second continuance within which to try again to locate Rountree, we cannot conclude based on the evidence before the habeas court that his failure to do so amounted to ineffective assistance. We cannot say that it was unreasonable for trial counsel to conclude that additional attempts to locate Rountree would have been in vain, given that Rountree had successfully evaded authorities in the past and that the petitioner's jury trial could not be continued indefinitely until Rountree could be found. In fact, as the petitioner conceded at oral argument before this court, no evidence was presented at the habeas trial that, if either the state marshal service or Markle had had a few more days, they would have been able to find Rountree. Furthermore, the petitioner did not overcome the presumption that it "might be considered sound trial strategy" on trial counsel's part not to further delay the petitioner's criminal trial by continuing to search for Rountree, given that undertaking additional efforts to locate him, which may well have been futile, might have resulted in jurors becoming unavailable and/or the fading of jurors' memories concerning the petitioner's case. See *Holloway* v. *Commissioner of Correction*, supra, 145 Conn. App. 364–65 (courts must indulge strong presumption that challenged actions may have been strategic decisions).

Moreover, trial counsel's decision to ask that the video recording of Rountree's testimony be admitted under the residual exception to the hearsay rule in lieu of undertaking further efforts to locate him also did not rise to the level of ineffective assistance. Although our Supreme Court has noted that the residual exception to the hearsay rule "[should be] applied in the rarest of cases"; *State* v. *Bennett*, 324 Conn. 744, 762, 155 A.3d 188 (2017); it was reasonable for trial counsel to believe that the circumstances of the petitioner's criminal case—a case in which the only witness whose testimony could support the defense's theory could not be located but a video recording of his exculpatory testimony existed—was one of those rare cases where the residual hearsay exception applied. Additionally, as explained above, this decision "might be considered sound trial strategy," given the time constraints of a jury trial and the lack of evidence that Rountree could quickly and easily be located if a continuance was granted. See *Holloway* v. *Commissioner of Correction*, supra, 145 Conn. App. 364–65.

We are not persuaded by the petitioner's claim that the facts of the present case are identical to those in *Hodgson* v. *Warren*, 622 F.3d 591 (6th Cir. 2010), and that we therefore should reach the same outcome. In *Hodgson*, trial counsel failed to seek a continuance of a criminal trial when an exculpatory witness whom counsel had subpoenaed failed to appear. Id., 594. Instead, all that counsel did was to refuse the state's request to waive the witness' presence, a step that caused the court to issue a bench warrant in an attempt to secure the witness' appearance. Id., 600. Counsel, however, did not seek to delay the proceedings so that the warrant could be served, and the jury began deliberating only three hours after the warrant had issued. Id. Following the defendant's conviction on all charges, the defendant filed a petition for a writ of habeas corpus alleging, in relevant part, that his trial counsel had rendered ineffective assistance by failing to undertake additional efforts to secure the testimony of the exculpatory witness. Id., 598. The United States District Court for the Eastern District of Michigan found that counsel's inaction constituted ineffective assistance. Id. On appeal, the United States Court of Appeals for the Sixth Circuit agreed, holding that counsel's failure to seek at least an adjournment in order to make an additional attempt to secure the witness' testimony amounted to ineffective assistance. Id., 599–600.

We conclude that the present case is distinguishable from *Hodgson* in two crucial respects. First, here, after learning that Rountree had failed to appear in accordance with his subpoena, trial counsel requested that a capias warrant issue and also secured a continuance of the trial until the following Monday, which gave the state marshal service three days to locate Rountree. Second, upon learning that the state marshal service had been unable to locate Rountree, trial counsel made an additional attempt to introduce Rountree's testimony by moving for his recorded statement to be admitted into evidence under the residual hearsay exception. Thus, in the present case, trial counsel took additional steps to secure the exculpatory witness' testimony beyond those taken by trial counsel in *Hodgson*. Therefore, we decline to reach the same conclusion as was reached in that case.

Accordingly, because the petitioner failed to present sufficient evidence that trial counsel did not make reasonable efforts to secure Rountree's appearance and introduce his testimony, we cannot say that his failure to request a second continuance constituted deficient performance. Therefore, the habeas court properly found that the petitioner failed to prove that trial counsel performed deficiently.[13]

B

Actual Innocence

The petitioner next claims that the habeas court improperly denied his actual innocence claim. We again are not persuaded.

We begin by setting forth the law governing claims of actual innocence and the corresponding standard of review. "Actual innocence, also referred to as factual innocence . . . is different than legal innocence. Actual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt. . . . Rather, actual innocence is demonstrated by affirmative proof that the petitioner did not commit the crime. . . .

"[T]he proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime. . . .

"Our Supreme Court recently clarified the actual innocence standard in *Gould* [v. *Commissioner of Correction*, 301 Conn. 544, 560–61, 22 A.3d 1196 (2011)]. In *Gould*, the habeas court found that the petitioner was entitled to relief on his actual innocence claim after the recantations of testimony that was the sole evidence of [the petitioner's] guilt. . . . On appeal, our Supreme Court held that the clear and convincing burden . . . requires more than casting doubt on evidence presented at trial and the burden requires the petitioner to demonstrate actual innocence through affirmative evidence that the petitioner did not commit the crime. . . .

"Affirmative proof of actual innocence is that which might tend to establish that the petitioner *could not* have committed the crime even though it is unknown who committed the crime, that a *third party* committed the crime or that *no* crime actually occurred. . . . Clear and convincing proof of actual innocence does not, however, require the petitioner to establish that his or her guilt is a factual impossibility. . . .

"With respect to the first component of the petitioner's burden, namely, the factual finding of actual innocence by clear and convincing evidence . . . [t]he appropriate scope of review is whether, after an independent and scrupulous examination of the entire record, we are convinced that the finding of the habeas court that the petitioner is actually innocent is supported by substantial evidence." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 149 Conn.

App. 681, 706–707, 89 A.3d 426 (2014), appeal dismissed, 321 Conn. 765, 138 A.3d 278, cert. denied sub nom. *Jackson* v. *Semple*, U.S. , 137 S. Ct. 602, 196 L. Ed. 2d 482 (2016); see also *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 791–92, 700 A.2d 1108 (1997) (establishing clear and convincing evidence standard for actual innocence claims).

"As to the second component of the petitioner's burden, that no reasonable fact finder would find the petitioner guilty . . . our scope of review is plenary. A habeas court is no better equipped than we are to make the probabilistic determination of whether, considering the evidence as the habeas court did, no reasonable fact finder would find the petitioner guilty. That type of determination does not depend on assessments of credibility of witnesses or of the inferences that are the most appropriate to be drawn from a body of evidence—assessments that are quintessentially [the] task for the [fact finder] in a habeas proceeding. . . . Determining whether no reasonable fact finder, considering the entire body of evidence as the habeas court did, would find the petitioner guilty is either an application of law to the facts or a mixed question of law and fact to which a plenary standard of review applies." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 134 Conn. App. 44, 51–52, 37 A.3d 802, cert. denied, 304 Conn. 919, 41 A.3d 306 (2012).

On appeal, the petitioner contends that the court improperly denied his actual innocence claim. Specifically, the petitioner argues that the court prevented him from proving his actual innocence claim by denying his request for a capias warrant and a continuance to secure Rountree's testimony at the habeas trial, testimony that would have demonstrated that Pope, and not the petitioner, was the shooter.

According to the petitioner, both requests should have been granted because the petitioner had satisfied the requirements for the issuance of a capias warrant. Conversely, the respondent argues that (1) the habeas court acted within its discretion when it denied the petitioner's requests for a capias warrant and a continuance and, alternatively, (2) even if it is assumed that the habeas court erred in denying the petitioner's requests, any error was harmless.

"[T]he issuance of a capias [warrant] is not mandatory but, rather, rests in the sole discretion of the trial court." *State* v. *Shawn G.*, 208 Conn. App. 154, 177, 262 A.3d 835, cert. denied, 340 Conn. 907, 263 A.3d 822 (2021). Accordingly, we review a court's denial of a request for a capias warrant for an abuse of discretion. Id. Our review of a court's ruling on a request for a continuance is likewise governed by the abuse of discretion standard. Id. "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did."

Id. Moreover, it is well settled that, in the absence of structural error, the mere fact that a court issued an improper ruling does not entitle the party challenging that ruling to relief. See *State* v. *Myers*, supra, 178 Conn. App. 105. An improper ruling must also be harmful to justify any relief. See *Gonzalez* v. *Commissioner of Correction*, 127 Conn. App. 454, 460, 14 A.3d 1053, cert. denied, 302 Conn. 933, 28 A.3d 991 (2011).

Even if we assume that the habeas court abused its discretion in denying the petitioner's requests for a capias warrant and a continuance, we conclude that any error was harmless because, even had Rountree testified at the habeas trial consistent with the recorded statement that he gave to the police before the petitioner's criminal trial, his testimony would have been insufficient to meet the demanding clear and convincing standard under *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 791–92.

Rountree's testimony at the petitioner's habeas trial would not have satisfied the clear and convincing standard because his testimony would have been contradictory to the state's evidence and, thus, it could not have unquestionably established the petitioner's innocence. See *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 795 ("the clear and convincing evidence standard . . . *forbids relief whenever the evidence is* loose, equivocal or *contradictory*" (emphasis added; internal quotation marks omitted)); see also *Gould* v. *Commissioner of Correction*, supra, 301 Conn. 561 ("actual innocence is demonstrated by affirmative proof that the petitioner did not commit the crime"). More specifically, Rountree's testimony concerning the identity of the shooter would not have negated the evidence of the petitioner's guilt that was admitted at his criminal trial, specifically, Crooks' eyewitness testimony that the petitioner was the one who shot the victim and the fact that the gun that was used to kill the victim was owned by the petitioner and found in his possession one month after the shooting. See *State* v. *Myers*, supra, 178 Conn. App. 108. This is particularly true because the petitioner made no effort at his habeas trial to impeach or otherwise call into question the evidence that was introduced against him at the criminal trial. At most, Rountree's testimony might have raised a question as to the petitioner's guilt that, in turn, could have raised a reasonable doubt in the minds of the jury. That, however, is not enough to satisfy the clear and convincing standard under *Miller* and *Gould*. See *Gould* v. *Commissioner of Correction*, supra, 560–61 ("[a]ctual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt"); *Miller* v. *Commissioner of Correction*, supra, 795.

Put another way, Rountree's testimony at the petitioner's habeas trial would not have satisfied the clear

and convincing standard because, even if Rountree's identification of Pope as the shooter had been presented at the petitioner's criminal trial, there was still sufficient evidence from which the jury could find the petitioner guilty. As this court summarized in the petitioner's direct appeal of his conviction, "the jury reasonably could have found that the [petitioner] shot Drew to death by firing two bullets that entered Drew's body. Both bullets came from the [petitioner's] gun and were recovered from Drew's body. The [petitioner] still was in possession of this gun a month after the shooting. Crooks testified at the defendant's trial under oath and was cross-examined on his testimony that it was the defendant who shot Drew." *State* v. *Myers*, supra, 178 Conn. App. 108. Because the jury would not have been required to believe Rountree, and because the petitioner at his habeas trial did nothing to undermine the evidence pointing to his guilt, the jury reasonably could have found him guilty even if Rountree had testified.

In sum, for the foregoing reasons and after an independent and scrupulous examination of the entire record, we conclude that the habeas court did not err in denying the petitioner's actual innocence claim.

## II

## AC 44736

The petitioner claims that the trial court erred in dismissing his petition for a new trial because the court incorrectly concluded that (1) the petition had been filed after the expiration of the limitation period under General Statutes § 52-582 and (2) therefore, it lacked subject matter jurisdiction over the petition. We disagree.

We first set forth the following additional facts and procedural history that are relevant to our resolution of this claim. On February 26, 2020, the petitioner filed a petition for a new trial, claiming, in relevant part, that he was entitled to a new trial on the basis of newly discovered evidence that was likely to produce a different result in a new trial.[14] On April 27, 2020, the respondent, the state of Connecticut, filed an answer in which it denied the petitioner's claim. Thereafter, on May 11, 2020, the respondent filed a motion for summary judgment and a memorandum in support of that motion. In its motion, the respondent claimed that the court lacked subject matter jurisdiction over the petitioner's petition for a new trial because the petition had been filed after the applicable three year statute of limitations had run and, accordingly, the petitioner's claim was time barred. The respondent then also filed an amended answer wherein it asserted as a special defense that § 52-582, which provides the applicable statute of limitations, "may apply depriving this court of subject matter jurisdiction."

On May 29, 2020, the petitioner filed an objection to

the respondent's motion for summary judgment. According to the petitioner, when § 52-582 was amended by No. 18-61 of the 2018 Public Acts (P.A. 18-61), a new exception to the limitation period was created. Under that exception, the petitioner argued that he was permitted to file his petition for a new trial after the limitation period had run because the petition relied on evidence that was unavailable at the time of the trial, specifically, Rountree's testimony that someone else was the shooter.

On March 2, 2021, the parties appeared and presented argument on the respondent's motion for summary judgment. The respondent first argued that any testimony from Rountree did not qualify as newly discovered evidence because such evidence was known to the parties at the time of the petitioner's criminal trial. The respondent also argued that the new exception under § 52-582 applied only to newly discovered *forensic* evidence, not to any and all newly discovered evidence. Conversely, the petitioner argued that § 52-582, as amended by P.A. 18-61, permits the late filing of a petition for a new trial based on any newly discovered evidence, including newly *available* evidence, and that because Rountree's testimony constituted newly available evidence (given that such testimony was not available at the petitioner's criminal trial), his petition was not time barred.

Thereafter, the court granted the respondent's motion for summary judgment and dismissed the petitioner's motion for a new trial, stating: "[The petitioner] has already indicated in his petition itself that Mr. Rountree's statement was known to him, Mr. Rountree's testimony was known to him at the time of the underlying criminal proceeding. And the court finds no support for the position that the unavailability of a witness is the equivalent of newly discoverable evidence. So, consequently, the petitioner did not file [his] petition prior to the expiration of the statute of limitations, depriving the court of subject matter jurisdiction. So, the petition is dismissed for lack of subject matter jurisdiction." On March 10, 2021, the petitioner filed a petition for certification to appeal, which the habeas court denied. This appeal followed.

We now set forth the relevant standards of review for the petitioner's claim. "It is well established that we apply the abuse of discretion standard when reviewing a court's decision to deny a request for certification to appeal from a denial of a petition for a new trial. . . . Therefore, the threshold issue that we must now decide is whether the court abused its discretion in denying the petition for certification to appeal. *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), establishes the framework for satisfying the criteria necessary to show an abuse of discretion. A petitioner satisfies that burden by demonstrating: [1] that

the issues are debatable among jurists of reason; [2] that a court could resolve the issues [in a different manner]; or [3] that the questions are adequate to deserve encouragement to proceed further." (Citation omitted; internal quotation marks omitted.) *Holliday* v. *State*, 111 Conn. App. 656, 658, 960 A.2d 1101 (2008), cert. denied, 291 Conn. 902, 967 A.2d 112 (2009). In our review of whether the court abused its discretion in denying certification to appeal, we necessarily must examine the petitioner's underlying claim that the court improperly concluded that his petition was time barred. See id., 659.

Whether the court had subject matter jurisdiction to consider the petitioner's petition for a new trial on the basis of newly discovered evidence is an issue of statutory construction over which our review is plenary. *Turner* v. *State*, 172 Conn. App. 352, 361, 160 A.3d 398 (2017). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 362.

We next set forth the law governing petitions for a new trial. "Pursuant to [General Statutes] § 52-270, a convicted criminal defendant may petition the Superior Court for a new trial on the basis of newly discovered evidence." *Skakel* v. *State*, 295 Conn. 447, 466, 991 A.2d 414 (2010). A critical limitation on the exercise of the court's discretion in ruling on a petition for a new trial, however, is the statute of limitations. As a general rule, "[n]o petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of. . . . The three year period begins to run from the date of rendition of judgment by the trial court . . . which, in a criminal case, is the date of imposition of the sentence by the trial court." (Citations omitted; internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 426, 641 A.2d 1356 (1994).

Section 52-582 (a) establishes the three year limitation period for petitions for a new trial. Prior to 2018, § 52-582 included an exception to the limitation period for petitions based on certain DNA evidence, providing: "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of, *except that a petition based on DNA (deoxyribonucleic acid) evidence that was not discoverable or available at the time of the original trial* may be brought at any time after the discovery or availability of such new evidence." (Emphasis added.) General Statutes (Rev. to 2017) § 52-582. Then, in 2018, the legislature enacted P.A. 18-61, wherein it expanded the circumstances under § 52-582 in which a petition for a new trial could be filed after the limitation period had otherwise run.

General Statutes § 52-582, as amended by P.A. 18-61, now provides in relevant part: "(a) No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of, except that a petition for a new trial in a criminal proceeding based on DNA (deoxyribonucleic acid) evidence *or other newly discovered evidence, as described in subsection (b) of this section, that was not discoverable or available at the time of the original trial or at the time of any previous petition* under this section, may be brought at any time after the discovery or availability of such new evidence, and the court may grant the petition if the court finds that had such evidence been presented at trial, there is a reasonable likelihood there would have been a different outcome at the trial.

"(b) (1) *Such newly discovered evidence* in support of a petition for a new trial *may include newly discovered forensic scientific evidence that was not discoverable or available at the time of the original trial* or original or previous petition for a new trial . . . including that which might undermine any forensic scientific evidence presented at the original trial." (Emphasis added.)

Resolving the petitioner's claim on appeal requires us to interpret the language of § 52-582. The petitioner argues that, under § 52-582, the court had subject matter jurisdiction to consider his petition for a new trial because, even though the petition was filed outside of the limitation period, it was based on newly available evidence—specifically, Rountree's identification of Pope as the shooter—and, under the plain language of § 52-582, newly discovered evidence includes newly available evidence. Accordingly, he argues, because his petition was based on newly discovered evidence, it was not subject to the limitation period. The petitioner also argues that to the extent that § 52-582 has two possible interpretations—one interpretation where newly discovered evidence includes newly available evi-

dence and one where it does not—the interpretation in which newly discovered evidence includes newly available evidence is the more logical interpretation.

Conversely, the respondent argues that the court did not have subject matter jurisdiction to consider the petitioner's petition for a new trial because § 52-582 permits a petition for a new trial to be filed outside of the statute's limitation period *only* when the petition is based on newly discovered DNA or *forensic* evidence, neither of which is the basis for the petitioner's petition. The respondent further argues that, even if § 52-582 can be interpreted as applying broadly to all newly discovered evidence, Rountree's identification of Pope as the shooter still does not constitute newly discovered evidence because that information was known and available to the petitioner at the time of his criminal trial.

We now turn to the statute at issue. The relevant statutory language in § 52-582 is as follows: "(a) No petition for a new trial . . . shall be brought but within three years . . . except that a petition for a new trial in a criminal proceeding based on DNA . . . evidence *or other newly discovered evidence, as described in subsection (b) of this section,* that was not discoverable or available at the time of the original trial . . . may be brought at any time . . . . (b) (1) Such newly discovered evidence . . . *may include newly discovered forensic scientific evidence* that was not discoverable or available at the time of the original trial . . . ." (Emphasis added.)

On the basis of this language, specifically, the words "may include," we conclude that there are two reasonable ways to interpret the phrase "newly discovered evidence," as used in § 52-582. Although the word "may" generally conveys "permissive conduct and the conferral of discretion," "may" can also be interpreted as mandatory rather than directory when "the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its purposes . . . ." (Internal quotation marks omitted.) *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 601, 255 A.3d 851 (2020); see also *In re Clinton Nurseries, Inc.*, 608 B.R. 96, 115 (Bankr. D. Conn. 2019), ("'[m]ay' means 'have permission to . . .' but it also means 'shall, must—used esp[ecially] in deeds, contracts, and statutes' "), rev'd on other grounds, 998 F.3d 56 (2d Cir. 2021); Black's Law Dictionary (9th Ed. 2009) p. 1068 (defining "may" as both "[t]o be a possibility" and "is required to"; also stating, "[i]n dozens of cases, courts have held *may* to be synonymous with *shall* or *must* . . . in an effort to effectuate legislative intent" (emphasis in original)).

The plain language of § 52-582 does not resolve whether "may," as used in the statute, was meant to import permissive or mandatory conduct. If the legisla-

ture intended for "may" to be permissive, then § 52-582 must be read to provide that newly discovered evidence includes both forensic evidence *and* all other types of evidence. On the other hand, if it was the legislature's intent for "may" to be mandatory, then § 52-582 must be interpreted to provide that newly discovered evidence *only* includes evidence that is forensic in nature. Both interpretations are equally reasonable and plausible readings of § 52-582. Thus, we conclude that § 52-582 is ambiguous; see *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 430, 994 A.2d 1265 (2010) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)); and, therefore, we may properly look to extratextual sources to ascertain the intent of the legislature. See *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 111, 202 A.3d 262 (2019).

Accordingly, we turn to the legislative history concerning the legislature's 2018 amendments to § 52-582. The legislative history of P.A. 18-61 demonstrates that it was the legislature's intent for its amendments to § 52-582 to narrowly define newly discovered evidence as including *only* forensic evidence.

In a written submission to the Judiciary Committee, Senator Martin M. Looney, one of the five sponsors of P.A. 18-61 (Senate Bill 509), explained the purpose of the act, stating: "[Senate Bill 509] will update our laws to accommodate advances in the methods and kinds of *forensic evidence* found to be foundationally valid by the scientific community. . . . The bill would amend Section 52-582 . . . to permit a convicted person to petition for a new trial *based on newly discovered forensic evidence* without being subject to the current three year time limit on non-DNA evidence. . . . Senate Bill 509 would allow a judge to grant a new trial *upon a showing that forensic evidence* not available at the time of the original trial would likely have led to a different outcome. . . . I hope the [c]ommittee will support this bill to establish a way for the wrongfully convicted to use *newly discovered forensic evidence*." (Emphasis added.) M. Looney, Written Testimony Before the Judiciary Committee in Support of Senate Bill 509–An Act Concerning Newly Discovered Evidence (March 21, 2018) pp. 1–3. When considering the legislative history of a statute, we pay particular attention to the statements of legislators who sponsored the bill. See *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 275, 524 A.2d 621 (1987). Senator Looney's statement before the Judiciary Committee makes clear that it was his belief that P.A. 18-61 would amend § 52-582 to allow a petition for a new trial to be filed outside of the limitation period *only* if the petition was based on DNA evidence or newly discovered *forensic* evidence.

In addition, Representative William Tong, when moving for acceptance of the Joint Committee's favorable report and passage of P.A. 18-61 before the House of Representatives, explained that the act was "an expansion of our state's existing law on newly discovered evidence and the right of a person who petitioned for a new trial based on newly discovered evidence. We already have a provision for newly discovered evidence and a new trial when DNA evidence is provided . . . we [are now] expanding that provision to include *new forensic and scientific* information . . . ." (Emphasis added.) H.R. Proc., 2018 Sess., May 8, 2018, pp. 608–609. Following Representative Tong's motion, Representative Rosa Rebimbas expressed her support for the bill, stating, "Because this expansion is specifically *only forensic scientific evidence*, I'm comfortable in supporting it . . . . I just wanted to say I actually did reach out to [the Legislative Commissioners' Office] and just reaffirmed *that in fact it is limited only to scientific evidence—forensic scientific evidence* . . . ." (Emphasis added.) Id., pp. 609–10. Similarly, when Senator Paul Doyle moved before the Senate for acceptance of the Joint Committee's favorable report and passage of P.A. 18-61, he too stated that the act was intended to expand current law to give criminal defendants the right to petition for a new trial after the expiration of the three year limitation period when such petitions were based on newly discovered *forensic* evidence. S. Proc., 2018 Sess., May 2, 2018, pp. 16–18.

Accordingly, guided by this legislative history, we conclude that the legislature intended for newly discovered evidence under § 52-582 to include only newly discovered forensic evidence. Consequently, because the petitioner's untimely petition for a new trial was not based on such evidence, the court correctly concluded that it lacked subject matter jurisdiction over the petition and properly dismissed the petition on that basis.[15]

The judgment of the habeas court in Docket No. AC 44679 is affirmed; the appeal in Docket No. AC 44736 is dismissed.

In this opinion BRIGHT, C. J., concurred.

[1] Trial counsel initially considered claiming that the petitioner had acted in self-defense, but he later decided to present a third-party culpability defense instead.

[2] "A capias is a vehicle to compel attendance at a judicial proceeding." *State* v. *Shawn G.*, 208 Conn. App. 154, 176, 262 A.3d 835, cert. denied, 340 Conn. 907, 263 A.3d 822 (2021).

General Statutes § 54-2a (a) provides in relevant part: "In all criminal cases the Superior Court, or any judge thereof . . . may issue . . . capias for witnesses . . . who violate an order of the court regarding any court appearance . . . ."

[3] Section 8-9 of the Connecticut Code of Evidence provides: "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule."

[4] Specifically, the court concluded that Rountree's statement to the police suffered from numerous trustworthiness problems, including that Rountree was intoxicated when he witnessed the shooting, waited six days to give a statement to the police, and gave a statement only after being arrested himself.

[5] In his principal appellate brief, the petitioner also appeared to claim that the habeas court had improperly denied his due process claim, wherein he asserted that his due process rights were violated by "the marshal service's failure to execute the court-ordered capias intended to secure Rountree's presence and testimony at the criminal trial" and "[a trial court clerk's] purported failure to follow the capias warrant procedures." At oral argument before this court, however, the petitioner expressly abandoned his due process claim. Accordingly, we do not consider this claim. See *Cunningham* v. *Commissioner of Correction*, 195 Conn. App. 63, 65 n.1, 223 A.3d 85 (2019) (declining to review claims that counsel expressly abandoned at oral argument), cert. denied, 334 Conn. 920, 222 A.3d 514 (2020).

[6] The petitioner initially filed a petition for a writ of habeas corpus in December, 2016. A scheduling order was issued in connection with that petition, but no action was taken on the claims asserted therein.

[7] Practice Book § 7-19 provides in relevant part: "Self-represented litigants seeking to compel the attendance of necessary witnesses in connection with the hearing of any matter shall file an application to have the clerk of the court issue subpoenas for that purpose. The application shall include a summary of the expected testimony of each proposed witness so that the court may determine the relevance of the testimony. The clerk, after verifying the scheduling of the matter, shall present the application to the judge before whom the matter is scheduled for hearing . . . which judge shall conduct an ex parte review of the application and may direct or deny the issuance of subpoenas as such judge deems warranted under the circumstances . . . ."

[8] The petitioner also requested that a subpoena be issued for Giovanni Spennato, the chief clerk for the judicial district of New Haven. That subpoena was issued and served. At his habeas trial, however, the petitioner informed the court that he had "chosen to forgo that witness" and, thus, he did not present testimony from Spennato at that proceeding.

[9] These subpoenas were not immediately served on the witnesses because, on August 17, 2020, the court vacated its August 12, 2020 order after learning that Attorney W. Theodore Koch III had filed an appearance in the petitioner's habeas case. Thereafter, on August 26, 2020, the court reinstated its original order granting the petitioner's application for issuance of subpoenas, stating: "Following a further review of the file, which established that Attorney Koch is acting as standby counsel only on behalf of the petitioner, the court's [August 17, 2020] order is vacated. The [August 12, 2020] order granting the application for subpoena as requested is reinstated." The requested subpoenas were then served.

[10] Viglione testified that a "throwaway phone" is a phone for which the user "buy[s] a certain amount of minutes" and then the user can either "reuse that phone on additional minutes and/or buy a different phone with a different number linked up to it."

[11] On July 2, 2021, during the pendency of the present appeal, the petitioner filed a motion for articulation with the habeas court asking it to articulate the basis of its denial of his ineffective assistance of counsel claim. The habeas court denied the petitioner's motion for articulation, and the petitioner then filed a motion for review with this court. We granted review but denied the relief requested.

[12] In connection with the petitioner's petition for certification to appeal, the petitioner also applied for the appointment of counsel and a waiver of appellate fees. On December 23, 2020, the habeas court denied that application because "the petitioner was assisted by privately retained standby counsel." Thereafter, on February 26, 2021, the petitioner filed with this court a motion for permission to bring a late appeal from the decision of the habeas court. In that motion, the petitioner represented that, after the habeas court had denied the application for the appointment of counsel, the petitioner and his family had contacted the Office of the Chief Public Defender in an attempt to reverse that denial, but they ultimately retained private counsel. On April 14, 2021, this court granted the petitioner's motion to file a late appeal, and the petitioner filed the present appeal on May 4, 2021.

[13] At oral argument before this court, the petitioner conceded that the habeas court's failure to grant his request for a capias warrant and for a continuance to secure Rountree's testimony went only to the prejudice prong of the *Strickland* test. Accordingly, because we can resolve the petitioner's

ineffective assistance claim on the deficient performance prong alone, we need not determine, with regard to this claim, whether the habeas court's failure to grant a capias warrant and a continuance was an abuse of discretion.

[14] The petitioner also claimed in his petition for a new trial that his right to compulsory process under the sixth amendment had been violated because he was unable to secure Rountree's attendance and testimony at his criminal trial. The court held that this claim also was time barred by § 52-582 and the petitioner does not challenge that result on appeal.

[15] Because we conclude that § 52-582 does not allow the petitioner to file his petition for a new trial outside of the three year limitation period, we need not address the petitioner's argument that Rountree's testimony constitutes newly discovered evidence under *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1978).

---